**UNITED STATES of America, Appellee,**

v.

**Dalmiro Eduardo CAMPUZANO and John Jario Rios, Defendants–Appellants.**

**Nos. 772, 615, Dockets 89–1371, 89–1373.**

United States Court of Appeals, Second Circuit.

Argued Feb. 15, 1990.

Decided June 11, 1990.

William F. Lally, Jr., Valatie, N.Y., for defendant-appellant Dalmiro Eduardo Campuzano.

Robert W. Linville, Albany, N.Y., for defendant-appellant John Jario Rios.

Barbara D. Cottrell, Asst. U.S. Atty. (Frederick J. Scullin, Jr., U.S. Atty., George A. Yanthis, Asst. U.S. Atty., N.D.N.Y., Albany, N.Y., of counsel), for appellee.

Before LUMBARD, CARDAMONE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Appellants Dalmiro Eduardo Campuzano and John Jario Rios appeal from their convictions by a jury in the Northern District of New York for conspiracy to distribute narcotics and from the sentences imposed by Judge Gagliardi. Rios and Campuzano challenge the jury instruction as to the elements of the crime charged and the district court's determination of the applicable base offense level under the Sentencing Guidelines. We affirm.

## BACKGROUND

This case arose out of a narcotics conspiracy involving the two appellants and six co-defendants. Appellants and most of their co-defendants were employees at a hotel in Ellenville, New York. In the course of a money-laundering investigation, an undercover Customs Service agent went to work as a waitress at the hotel and discovered narcotics trafficking. The undercover waitress, together with an agent from the Drug Enforcement Administration posing as the waitress's cousin, arranged for two controlled purchases of cocaine from the traffickers. A purchase of one kilogram of cocaine was completed on October 26, 1988. A second purchase involving two kilograms of cocaine was completed on November 15. After the sales, the various defendants, including appellants, were arrested. A total of nearly five kilograms of cocaine was either purchased undercover or seized, and there was testimony at trial of other narcotics transactions.

A superseding indictment charged Rios and Campuzano with conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846 (1988). The jury convicted them on this count. The jury also answered special interrogatories submitted by the district court regarding the volume of cocaine involved in the conspiracy. In response to the interrogatory, "Was five kilograms (5,000 grams) or more involved?" the jury answered "No." The jury answered "Yes" to the interrogatory, "Was one-half kilogram (500 grams) or more but less than five kilograms (5,000 grams) involved?"

The district court sentenced both appellants to terms of seventy-two months. Appellants challenge their convictions and their sentences.

## DISCUSSION

### 1. *Jury Charge*

Appellants claim that the district court erred in its instructions regarding the narcotics conspiracy count because it did not require the jury to find that, as charged in the indictment, more than five kilograms of cocaine was involved.[1] Such a charge, they argue, amounted to an amendment of the indictment and failed to include an essential element of the offense. We disagree.

Neither appellant raised this issue at trial.[2] Nevertheless, we address it because a

---

**1.** Appellants also attack the use of special interrogatories. What harm they suffered from that use is difficult to perceive, however, particularly since the answer indicated that the jury found that less than five kilograms of cocaine was involved. If, as appellants contend, a finding that more than five kilograms was involved was an element of the crime, the interrogatory answer would entitle appellants to an acquittal. Moreover, appellants never objected to the use of the special interrogatories in the district court.

In any event, although jury interrogatories are generally disfavored in criminal cases, *see United States v. Adcock,* 447 F.2d 1337, 1339 (2d Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971), a trial court may use them when the information sought is relevant to the sentence to be imposed, *see United States v.*

*Stassi,* 544 F.2d 579, 583–84 (2d Cir.1976), *cert. denied,* 430 U.S. 907, 97 S.Ct. 1176 & 1177, 51 L.Ed.2d 582 (1977). In particular, we have upheld the use of special interrogatories where the information sought is relevant to the enhancement of the sentence under 18 U.S.C. § 841(b). *See United States v. Pforzheimer,* 826 F.2d 200, 206 (2d Cir.1987); *see also United States v. Orozco–Prada,* 732 F.2d 1076, 1083–84 (2d Cir.) (special interrogatories only way to determine applicable sentence for conspiracy conviction involving controlled substances), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154 & 155, 83 L.Ed.2d 92 (1984).

**2.** When the court raised the quantity question with counsel, counsel for other defendants argued that the amount alleged in the indictment is an element of the offense. Appellants' attorneys, however, did not join in the objection.

failure to charge an essential element of the offense might constitute plain error under Fed.R.Crim.P. 52(b). *See United States v. Golomb,* 811 F.2d 787, 793 (2d Cir.1987); *United States v. Walsh,* 700 F.2d 846, 856 n. 6 (2d Cir.), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *see also United States v. Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985) (plain error should be found only where error would seriously affect fairness or integrity of proceedings).

Count I of the indictment charged the appellants with violating 21 U.S.C. § 846 (1988) by conspiring to distribute "a quantity of cocaine in excess of five (5) kilograms in violation of Title 21, United States Code, Section 841(a)(1)." Section 841(a)(1) makes it unlawful to distribute a controlled substance, while Section 846 prohibits conspiracies to violate Section 841(a)(1). Although Section 841(b) was not referred to in the indictment, it is one source of the present dispute because it provides mandatory minimum penalties for violations of Section 841(a) that involve specified quantities of controlled substances. In particular, Section 841(b) requires a mandatory minimum sentence of ten years where more than five kilograms of cocaine are involved, *see* 21 U.S.C. § 841(b)(1)(A)(ii) (1988), and of five years where more than five hundred grams of cocaine are involved, *see* 21 U.S.C. § 841(b)(1)(B)(ii) (1988).

The district judge took the view that the jury could convict appellants for a conspiracy to violate Section 841(a)(1) without finding that a particular quantity of narcotics was involved, even though a particular quantity was mentioned in the indictment. He believed that the quantity issue was not for the jury because it "only goes to the penalty phase of the case and not to the question of guilt or innocence." He therefore charged the jury that it could convict on the conspiracy count if it found a con-

spiracy to distribute "a quantity" of cocaine. He also decided, however, that there would be "no harm" in getting a determination from the jury as to the precise quantity involved for purposes of enhancement and submitted the special interrogatories described above.

■ We agree with the view of the district court. Section 841(a) of Title 21 prohibits the distribution of *any* amount of cocaine and in no way requires proof of a particular quantity of narcotics as an element of the conspiracy to distribute.[3] When an indictment does allege that a particular quantity is involved, the effect is only to put the defendant on notice that the enhanced penalty provisions of Section 841(b) may apply. Because the quantity is relevant only to enhancement of the sentence, the government is not required to prove the quantity alleged, unless of course the specification of the particular quantity is somehow misleading to the defendant as to the conduct or transaction that is the basis of the charge. Appellants make no claim to having been so misled.

In so holding, we join a clear majority of circuits that have held that quantity is not an element of the crimes proscribed by Sections 841(a) and 846. *See United States v. Brown,* 887 F.2d 537, 540 (5th Cir.1989); *United States v. Jenkins,* 866 F.2d 331, 334 (10th Cir.1989); *United States v. Wood,* 834 F.2d 1382, 1388–90 (8th Cir.1987); *United States v. Gibbs,* 813 F.2d 596, 599–600 (3d Cir.), *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987); *United States v. Normandeau,* 800 F.2d 953, 956 (9th Cir.1986); *United States v. McHugh,* 769 F.2d 860, 868 (1st Cir.1985).

### 2. *Sentencing*

■ Appellants also argue that the district court improperly applied the Sentencing Guidelines in determining their base

---

The district court later asked for any comments on the proposed charge and received none. Finally, after the charge was given, the court asked for any "exceptions or requests," and counsel for both appellants answered "Nothing, Your Honor."

**3.** Section 841(a) provides:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

offense level. The determination of the quantity of cocaine for purposes of calculating a base offense level is a factual determination for the court subject to the clearly erroneous standard of review.[4] *See* 18 U.S.C. § 3742(e) (1988). We affirm the district court's findings regarding the base offense level and the resultant sentences.

The base offense level for narcotics offenses is to be determined by resort to the drug quantity table in U.S.S.G. § 2D1.1, which contains a scale of offense levels gauged by the quantity of narcotics involved. The pertinent base offense levels for cocaine in effect at the time[5] were:

| 3.5–4.9 K | level 30 |
| 2 –3.4 K | level 28 |
| 0.5–1.9 K | level 26. |

At sentencing, the district judge indicated that he was accepting the jury's finding concerning the amount of cocaine involved in the conspiracy. However, he misspoke when he stated that the jury had found that the conspiracy involved "less than five kilograms but more than four kilograms." Actually, the jury had found that the conspiracy involved less than five kilograms but more than five hundred grams (one-half kilogram or 0.5K). Nevertheless, it is clear in the record that the district judge did not apply a finding of four to five kilograms in calculating the sentences under the Guidelines. A finding that four to five kilograms was involved would have led to a base offense level of 30. Because the district judge found a base offense level of 28, it is clear that his remarks about the jury's findings were a misstatement not affecting the sentence.

A further problem in the application of the Guidelines arose because different probation officers prepared the presentence reports for each appellant. Although appellants' crimes were substantially identical, the probation officers reached divergent conclusions as to the pertinent base offense levels. The probation officer for Rios assigned a base offense level of 32 because "a wide range of arguments could be presented from a base offense level as high as 32 to as low as 14." No basis for selecting the highest level was given. The probation report for Campuzano indicated that the jury finding required a base offense level of at least 26 (corresponding to 500 grams of cocaine). However, the probation officer suggested that the base offense level for Campuzano should be 28, corresponding to amounts of cocaine over 2 kilograms but under 3.9 kilograms. *See* U.S.S.G. § 2D1.1(a)(3) (Oct. 1987) (drug quantity table). The basis for this recommendation was evidence indicating that Campuzano was present at a discussion among various defendants relating to the two-kilogram drug sale.

Judge Gagliardi resolved the conflict between the two probation officers by adopting the probation department's version of

---

**4.** Campuzano argues that determination of the quantity of cocaine involved for purposes of the Guidelines is a jury question. That claim is clearly meritless. Determination of the relevant base offense level under the Guidelines occurs in the course of the sentencing process, which begins after conviction by the jury.

We do note that language in *United States v. Pforzheimer,* 826 F.2d at 206, suggests that without a jury finding a trial judge cannot find a quantity of a controlled substance necessary for application of an enhanced sentencing provision such as Section 841(b). It appears, however, that the courts of appeals are divided on this issue. *Compare United States v. Alvarez,* 735 F.2d 461, 468 (11th Cir.1984) (quantity is critical element for enhanced sentencing) *and United States v. Wood,* 834 F.2d at 1391 and n. 1 (Bright, J., dissenting) (suggesting jury might make finding justifying enhanced sentence)

*with United States v. Jenkins,* 866 F.2d at 334 ("[T]he quantity requirements of § 841(b)(1)(B) are applicable only to sentencing and do not relate to the jury's fact-finding function."). Because Judge Gagliardi submitted the quantity issue to the jury and accepted its finding insofar as that finding was pertinent to enhancement under Section 841(b), Campuzano's appeal does not present this issue.

**5.** The November 1989 revisions of the Sentencing Guidelines modified the drug quantity table, *see* U.S.S.G. § 2D1.1(c) (Nov. 1, 1989) (drug quantity table), but those Guidelines apply only to offenses committed after November 1, 1989, *see United States v. Guerrero,* 863 F.2d 245, 250 (2d Cir.1988) (Guidelines revision dated January 15, 1988, applicable to offenses committed after that date), and therefore are not relevant to this case.

facts regarding Campuzano for Rios as well. When the court adjusted the base offense level for Rios to 28, however, he stated that it was the calculation for Campuzano that was being modified. Again, it is clear in the record that this was a simple misstatement not affecting the sentence. After a two-point reduction for being minor participants, *see* U.S.S.G. § 3B1.2(b) (Oct. 1987), the district court reached a total offense level of 26, which, given the criminal history category of both appellants, indicated a Guidelines range of 63 to 78 months, *see* U.S.S.G. Ch. 5, Part A (Oct. 1987) (sentencing table). Judge Gagliardi sentenced both appellants to 72 months' imprisonment.

A finding that more than two kilograms of cocaine was involved was within the "range" of the jury's special verdict and was not clearly erroneous. Judge Gagliardi presided at appellants' trial and heard the testimony of all witnesses, including the appellants. The evidence implicating Campuzano in the two-kilogram sale implicated Rios as well.[6] *See* 18 U.S.C. § 3742(e). Appellants made no offer to present evidence contesting the version of the facts in Campuzano's presentence report and, accordingly, we affirm appellants' sentences.

Affirmed.

---

**6.** We have examined Rios's claim of error regarding the admission of the co-defendant's post-arrest statement that implicated Rios. This claim was never raised in the district court and is waived. In any event, the co-defendant testified and was available for cross-examination. *See United States v. Ricks,* 776 F.2d 455, 466 (4th Cir.1985), *modified on other grounds on rehearing,* 802 F.2d 731 (4th Cir.1986), *cert. denied,* 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986); *United States v. Howard,* 751 F.2d 336, 338 (10th Cir.1984), *cert. denied,* 472 U.S. 1030, 105 S.Ct. 3507, 87 L.Ed.2d 638 (1985). There was thus no error in admission of the post-arrest statement.