**UNITED STATES of America, Appellee,**

v.

**Alvis JACOBO, Joaquin Fernandez, and Ramon Rodriguez, Defendants–Appellants.**

**Nos. 1096–1098, Dockets 90–1240, 90–1410 and 90–1516.**

United States Court of Appeals, Second Circuit.

Argued March 25, 1991.

Decided May 23, 1991.

term of imprisonment on the possession count to be served concurrently with the 10–year term. Fernandez was sentenced to two concurrent 157–month terms of imprisonment. Rodriguez received the statutory minimum 20–year term of imprisonment applicable to him on the conspiracy count and a 10–year term of imprisonment on the possession count to be served concurrently with the 20–year term. On appeal, defendants contend principally that their sentences for conspiracy should have been calculated on the basis of two kilograms of cocaine rather than five, and that the court inappropriately deferred to jury findings with respect to the quantity of cocaine involved. For the reasons below, we remand to permit the court to make its own findings in connection with sentencing.

Brian Douglas Coad, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Michele Hirshman, Asst. U.S. Atty., New York City, on the brief), for appellee.

Jane Simkin Smith, Millbrook, New York City, for defendant-appellant Alvis Jacobo.

Vivian Shevitz (Georgia J. Hinde, New York City, on the brief), for defendant-appellant Joaquin Fernandez.

Barbara L. Hartung, New York City, for defendant-appellant Ramon Rodriguez.

Before OAKES, Chief Judge, and KEARSE and McLAUGHLIN, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Alvis Jacobo, Joaquin Fernandez, and Ramon Rodriguez appeal from judgments entered in the United States District Court for the Southern District of New York after a jury trial before Kimba M. Wood, *Judge*, convicting them on one count of conspiracy to distribute five kilograms of cocaine, in violation of 21 U.S.C. § 846 (1988), and one count of possession of two kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B) (1988). Defendants were sentenced principally as follows. Jacobo received the statutory minimum 10–year prison term applicable to him on the conspiracy count and a five-year

## I. BACKGROUND

The prosecution centered on events occurring between August 1 and August 16, 1989. The government's proof at trial consisted principally of the testimony of Drug Enforcement Administration ("DEA") informants Ramon Arturo Rodriguez ("Arturo") and Mario Perez, and accomplice witness Edgar Vivas, plus a tape-recorded conversation and physical evidence. Taken in the light most favorable to the government, the evidence showed the following.

On August 1, Arturo met defendant Ramon Rodriguez ("Rodriguez") who was driving a Trans Am automobile; Arturo asked Rodriguez if he wanted to sell his car for cash or drugs. Rodriguez responded that he could supply Arturo with drugs in amounts of up to 10 or 15 kilograms. A week later, Arturo asked whether Rodriguez could sell him seven kilograms of cocaine. They negotiated a price of $16,500 per kilo and set a time and place for the transaction. Rodriguez then asked Fernandez, his cousin, to help him obtain cocaine. They did not obtain the cocaine, and thus Rodriguez did not appear at the meeting scheduled with Arturo.

On August 16, Arturo called Rodriguez and sought to purchase five kilograms of cocaine. Again the negotiated price was $16,500; Rodriguez and Arturo agreed to

meet at 5 p.m. that afternoon. At 4:30, Arturo and Perez, the latter posing as Arturo's customer, called Rodriguez to finalize details. In this conversation, which was recorded, Rodriguez confirmed that he would bring five kilos to the appointed place at 5:30 p.m., and he sought confirmation that Arturo and Perez would be there.

Arturo and Perez duly arrived at the meeting place, and surveillance agents took up their positions. Rodriguez arrived in his Trans Am with Jacobo, whom he introduced to Arturo and Perez as his brother. Rodriguez stated that two kilos would be delivered first and, if all went well, the remaining three kilos would be delivered in about an hour. Shortly thereafter, Fernandez and Vivas arrived; Vivas, who had just been hired by Fernandez to do so, was carrying a bag. Seeing Fernandez and Vivas, Rodriguez told Perez that the cocaine had arrived.

Rodriguez got the bag from Vivas. Perez asked to examine the cocaine, and eventually Rodriguez gave the bag to Jacobo who went with Perez to a public telephone booth where he was going to show Perez the cocaine. He did not do so, however, because he noticed a uniformed police officer across the street. Rodriguez then suggested that they complete the transaction later. He and Jacobo gave the bag of cocaine back to Vivas, returned to Rodriguez's car, and began to drive away. After receiving a signal from Perez, the surveillance agents arrested Rodriguez, Jacobo, Vivas, and Fernandez.

The ensuing indictment charged each defendant with (1) conspiracy to distribute, or to possess with intent to distribute, five kilograms of cocaine, and (2) possession of two kilograms of cocaine. At trial Rodriguez testified that he had earlier attempted to fill Arturo's order for seven kilograms of cocaine but had been unable to do so. He stated that he had later tried to obtain five kilograms but could not, and thus on August 16 he had intended to obtain and deliver only two kilos. Accordingly, Rodriguez testified that he had conspired with Fernandez to sell only two kilograms of cocaine. He also said that Jacobo had not been involved in any drug-related conversations with the informants.

With respect to the conspiracy count, the court instructed the jury that in order to find any defendant guilty it must find that the government had proved beyond a reasonable doubt both that the defendant was a member of the alleged conspiracy and that the quantity of cocaine involved was either (a) at least five kilograms or (b) more than 500 grams but less than five kilograms. At defendants' request, the jury was given a special verdict form which required it to specify with respect to each defendant, *inter alia*, the amount of cocaine that that defendant had conspired to distribute. For Jacobo, for example, the conspiracy section of the form was as follows:

With respect to Count one of the indictment, we find Alvis Jacobo _____ Guilty _____ Not Guilty.

If you have found Alvis Jacobo guilty of conspiring to distribute or possess with intent to distribute cocaine, do you find that the defendant conspired to distribute or possess with intent to distribute (check one):

(a) 5 kilograms or more _____

(b) more than 500 grams but less than 5 kilograms _____

The jury found all three defendants guilty on both counts. On the conspiracy count, it found that each defendant had conspired to distribute at least five kilograms. The federal Sentencing Guidelines ("Guidelines"), provide that "[i]f the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." Guidelines § 2D1.4 Application Note 1. As discussed in greater detail in Part II.A., defendants were sentenced as indicated above on the basis of the jury's interrogatory answers that each defendant conspired to distribute at least five kilograms. These appeals followed.

## II. DISCUSSION

Defendants' principal contention on appeal is that they should not have been sentenced on the basis of the five-kilogram conspiracy found by the jury because there were no findings and no evidence sufficient to support an inference that they intended or were able to sell more than two kilograms. In addition, defendants argue that the court erred in admitting certain evidence at trial, and Fernandez contends that the court made other sentencing errors. We reject defendants' challenges to their convictions but find merit in some of their sentencing contentions.

### A. Questions as to Intent With Respect to Quantity

In support of their contention that they should not have been sentenced on the basis that their offenses involved five kilograms, defendants argue principally (1) that the admissible evidence was insufficient to support a finding that there was a conspiracy to distribute five kilograms of cocaine, rather than two; and (2) that under the Guidelines, the district court was required to make its own findings as to the intent and ability of each defendant with respect to the quantity of cocaine involved in the conspiracy and that it failed to do so in the erroneous belief that it was bound by the jury's verdicts. Though we reject defendants' first contention, we find merit in the second.

#### 1. Sufficiency of the Evidence

We find no merit in defendants' contentions that their conspiracy convictions should be reversed. To the extent that defendants suggest that they are entitled to a reversal because there was insufficient evidence to prove that they conspired to distribute more than two kilograms of cocaine, their argument is foreclosed by *United States v. Campuzano*, 905 F.2d 677 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). In *Campuzano*, we ruled that the particular quantity of narcotics is not an element of the offense. Thus, notwithstanding the indictment's charge of a con-

spiracy to sell a certain quantity of narcotics, if there is evidence to support a finding that the defendant conspired to sell any quantity of the forbidden substance, the jury's verdict of guilty is generally not impeachable on the ground that different quantities were charged and proven. In reviewing a verdict of guilty, we are of course required to defer to the jury's resolution of all questions as to the credibility of the witnesses, the inferences to be drawn, and the weight of the evidence. *See, e.g., United States v. Roman*, 870 F.2d 65, 71 (2d Cir.), *cert. denied*, 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989); *United States v. Stratton*, 779 F.2d 820, 828 (2d Cir.1985), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986); *United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983). The evidence in the present case, viewed in the light most favorable to the government, was ample to support the conclusion that each defendant had participated in a conspiracy to distribute cocaine.

Nor do defendants' charges of error in the court's evidentiary rulings provide any ground for granting them a new trial. They argue that the court should have excluded the expert testimony of a DEA agent to the effect that narcotics sellers commonly divide large transactions into two phases, completing the sale of part of the agreed total before delivering the remainder. That argument is not properly preserved for review, as there was no objection to this testimony at trial. *See, e.g., United States v. Torres*, 901 F.2d 205, 227–28 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). They also argue that the court improperly admitted testimony by the informants as to "threats" and "injuries" the informants had received. This argument, while duly preserved, is meritless. The testimony did not purport to link these events to the defendants, and the trial court took care to instruct the jury that the threats had not come from any of these defendants.

In sum, we see no basis for disturbing defendants' conspiracy convictions.

## 2. Sentencing

■ There is merit, however, in defendants' contention that there should be further proceedings in connection with sentencing. The Guidelines provide that, in connection with narcotics crimes, the defendant's offense level is to be calculated with reference to the quantity of narcotics involved. *See generally* Guidelines §§ 2D1.-1(a)(3) and (c). If the narcotics transaction was not completed, the offense level calculation should normally include the quantity under negotiation, unless the court finds that the defendant lacked the intent and ability to deal in the negotiated amount:

> If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, *where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount,* the court shall exclude from the guideline calculation the amount that *it finds* the defendant did not intend to produce and was not reasonably capable of producing.

Guidelines § 2D1.4 Application Note 1 (emphasis added). It is clear from the emphasized language that § 2D1.4 contemplates that the court itself is to make findings as to whether the defendant intended to produce the negotiated amount and was reasonably capable of producing that amount.

Though the matter of their intent and ability to produce five kilograms of cocaine was not pursued as vigorously as it might have been at the sentencing stage, defendants plainly had raised those questions at trial. Rodriguez had testified that although early in August he had attempted to obtain five or seven kilos to sell to the informant, he had failed, and that he did not have the funds to obtain more than two kilos. He maintained that in connection with the August 16 transaction, therefore, he never intended to deliver more than two kilograms because two kilos were all he could get. Jacobo had maintained, with the support of testimony by Rodriguez, that there was no evidence indicating that he was aware of any of Rodriguez's statements mentioning a five-kilogram sale or the delivery of three kilograms in addition to the first two; hence Jacobo argued that he had no knowledge that five kilograms had even been discussed and that he lacked the requisite intent.

Jacobo was the first of the defendants to be sentenced. Though he maintained that his participation in the offense had been minimal, he did not ask the court to make findings as to his knowledge, intent, or ability. Fernandez, the next defendant to be sentenced, did raise the intent and ability questions at his sentencing hearing. Relying on Rodriguez's trial testimony, he urged the court to sentence him on the basis of two kilograms on the ground that Rodriguez's promises of five kilograms had not been "serious." The district court declined, making clear its belief that it was bound by the jury's verdicts finding that each defendant had conspired to traffic in five kilograms. Thus, in response to Fernandez's urging that "justice be done and that I be sentenced for the two kilos," (Fernandez Sentencing Transcript, June 19, 1990 ("Fernandez Tr."), at 21), the court stated,

> I have no choice on that matter. I follow the jury, and thus we are dealing with penalties relating to five kilos ...

(*id.* at 22). Similarly, when Fernandez's attorney argued that the court should find that only two kilograms were involved because "any discussion of five was not a serious one," the court responded, "But that would require me to go against the jury verdict, which I can't do." (*Id.* at 25.) Rodriguez, who was the last defendant sentenced, did not further raise the issues of intent and ability.

The view that the court was bound by the jury's findings as to quantity was erroneous. As noted above, in *United States v. Campuzano,* which was decided after the sentencing of Jacobo but prior to the sentencing of Fernandez and Rodriguez, we held that a jury finding as to quantity is unnecessary to conviction. As to sentencing, the Guidelines, as quoted above, re-

quired the court itself to make findings with respect to the defendants' intent and ability to produce the negotiated quantity. Consistent with the Guidelines language, we observed in *Campuzano* that though the "trial court may use [jury interrogatories] when the information sought is relevant to the sentence to be imposed," 905 F.2d at 678 n. 1, "[t]he determination of the quantity of cocaine for purposes of calculating a base offense level is a factual determination for the court ...," *id.* at 680. Since the court in the present case declined to make findings as to intent and ability to deliver the promised five kilograms of cocaine in the belief that it was bound by the jury findings, we vacate defendants' sentences and remand to permit the district court to make its own findings.

■ The government argues that no remand is required, contending that the jury found that each defendant had the requisite knowledge and intent beyond a reasonable doubt, and that the sentencing court could hardly fail to make similar findings since it need only so find by a preponderance of the evidence. We have two difficulties with this proposition, one factual and one theoretical.

The factual difficulty is that the precise thrust of the jury's interrogatory answers is not entirely clear. The interrogatories did not use the terms knowledge or intent, and the jury had been instructed, in the traditional manner, that it could find a defendant guilty of conspiracy even if he did not know all of the conspiratorial details. It is thus possible that the jury did not find that each defendant had knowledge and intent with respect to the precise quantity of cocaine to be sold. On the other hand, the structure and content of the interrogatories suggested that the jury was to make findings in addition to their findings of guilt. The questions as to amount were, according to the interrogatory forms, to be answered only if the jury had already determined that a given defendant was guilty of conspiracy. Further, unlike the jury interrogatories in *Campuzano*, the interrogatories here did not ask simply what quantity of narcotics was "involved" in the

conspiracy; rather, they asked what quantity of narcotics each defendant had "conspired" to deal in. Since the latter question was to be answered only as to each defendant whom the jury had already found guilty of conspiracy, it could be interpreted as calling for a further finding with respect to that defendant's knowledge and intent as to quantity. We note, however, that, in constructing the interrogatories, the parties do not appear to have focused specifically on the issues of knowledge or intent. Rather, erroneously believing quantity to be an element of the offense, defendants argued that a two-kilogram conspiracy would be a lesser included offense within a five-kilogram conspiracy and sought to have particularized findings to support conviction of that "lesser" offense. Since the matter is to be remanded, we leave it to the district court, in the first instance, to interpret the meaning of the interrogatory answers and to determine whether and to what extent to accept them.

Second, the government's argument against remand is theoretically flawed. There is no reason in principle that, as to a matter that is not within the exclusive province of the jury, the sentencing court may not make findings that differ from those made by the jury. Obviously, since the court makes its findings on the basis of the preponderance of the evidence rather than under the beyond-a-reasonable-doubt standard, the court could reasonably make findings that are less favorable to the defendant than were those of the jury. More pertinent to the government's contention here, the court could also logically make findings that are more favorable to the defendant. Questions of inference and credibility are within the province of the finder of fact. As to any sentencing matter on which the court must make its own findings, the court is entitled to draw the inferences it believes appropriate and to make its own assessments as to the weight of the evidence and the credibility of the witnesses. Its inferences and evaluations may differ from those of the jury. For example, in describing at trial their August 16 meeting with Rodriguez and Jacobo, the informants indicated that some conversa-

tion had occurred inside Rodriguez's car, where they were introduced to Jacobo, and some had occurred outside. Their testimony was quite vague as to precisely where Rodriguez made his promise of three additional kilograms and whether or not Jacobo was then present; neither of the informants stated directly that that statement was made in the presence of Jacobo, and hence the only evidence cited to us by the government that bears specifically on the matter of Jacobo's knowledge that five kilograms were involved was the following testimony:

> Q. .... Based on what defendant Ramon Rodriguez said to you, and what you did with Ramon Rodriguez, and what you discussed with Alvis Jacobo, what was your understanding as to how many kilos of cocaine the defendant Ramon Rodriguez could deliver?
>
> A. That there will be no problem to do the 5 kilos of cocaine. But for the first time, the first it would be two and then 3.

Given this question and answer, to which there was no objection, a factfinder could infer that Jacobo was a participant in a discussion of the transaction as a five-kilogram deal. Apparently the jury so inferred. It is possible, however, given the compound nature of the question, that in fact the informant's five-kilogram understanding resulted from only one or two of the three mentioned bases, not including discussion with Jacobo. Since the court itself should make the findings bearing on sentencing, it is free to draw whatever inference seems appropriate to it. The court may, of course, have this witness recalled in order to clarify his testimony. On a matter such as this, the sentencing court's findings could well be more favorable to the defendants than were the jury findings. We of course express no view as to what the court's findings on remand should be.

B. *Other Issues*

■ Fernandez makes two additional challenges to his sentence, contending that the court (1) should have granted him credit for acceptance of responsibility under Guidelines § 3E1.1, and (2) should not have treated him as a "manager" of the offense under Guidelines § 3B1.1(c). The acceptance-of-responsibility credit was denied at least in part on the ground that "to accept responsibility with respect to two kilos of drugs where the jury found Mr. Fernandez guilty of having conspired to possess and distribute five kilos of the drugs is simply inadequate acceptance of responsibility." (Fernandez Tr. 29.) Since the court is to make its own findings with respect to the quantity of cocaine Fernandez intended to and was able to distribute, it should reassess Fernandez's entitlement to such a credit in light of its findings.

■ Regardless of what the court finds with respect to quantity, we see no merit in Fernandez's challenge to the court's determination of his role in the conspiracy. Facts relied on in sentencing, including findings as to the defendant's role, need be established only by a preponderance of the evidence and will be overturned only if they are clearly erroneous. *See United States v. Rodriguez–Gonzalez*, 899 F.2d 177, 182–83 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Rios*, 893 F.2d 479, 481 (2d Cir.1990); *see also United States v. Santiago*, 906 F.2d 867, 871 (2d Cir.1990); *United States v. Guerra*, 888 F.2d 247, 251 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990); 18 U.S.C. § 3742(e) (1988). We see no such error here. Given the evidence that Fernandez had obtained the cocaine and had hired Vivas to carry it for him, the court's finding that Fernandez played a managerial role in the enterprise was not clearly erroneous.

## CONCLUSION

For the above reasons, defendants' convictions are affirmed; the judgments are vacated and the matter is remanded for further sentencing proceedings not inconsistent with the foregoing.