**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eric PRIOR, Defendant–Appellant.**

**No. 90–4059.**

United States Court of Appeals, Sixth Circuit.

Argued July 18, 1991.

Decided Aug. 8, 1991.

Roger S. Bamberger, Asst. U.S. Atty. (argued), Cleveland, Ohio, for plaintiff-appellee.

Donald Krosin (argued), Office of the Federal Public Defender, Cleveland, Ohio, for defendant-appellant.

Before MERRITT, Chief Judge, KEITH, Circuit Judge and CELEBREZZE, Senior Circuit Judge.

MERRITT, Chief Judge.

Eric Prior has appealed his jury conviction and sentence for possession of cocaine base—"crack"—with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and for possessing a controlled substance within 1000 feet of a school in violation of 21 U.S.C. § 845a. Prior has raised two issues on appeal. He claims first that Judge Aldrich erred in refusing to suppress the crack recovered because the police officer who arrested Prior lacked probable cause to detain Prior in order to conduct the search which led to the discovery of the evidence. Next, he claims that Judge Aldrich erred in submitting to the jury the question of the quantity of drugs involved, and he claims further that she erred in believing that she was bound by the jury's finding with regard to quantity.

The District Court did not err in refusing to suppress the crack recovered because it correctly characterized the temporary seizure of Prior as a "*Terry* stop," and not an arrest. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* requires specific and articulable facts which create a reasonable suspicion of criminal activity before an investigatory stop is allowed, and Prior's behavior in disposing of the crack provided the necessary predicate for his temporary detention.

Prior's second issue requires reconsideration. Although the Sixth Circuit has held that the question of the quantity of drugs involved does not need to be submitted to the jury, we do not find any error in allowing the jury to function in an advisory capacity. We are unsure whether Judge

Aldrich believed herself bound by the jury's finding with regard to quantity, however, so we vacate the sentence imposed and remand for resentencing with instructions that the jury verdict be treated as a recommendation only.

A Street Gang Task Force comprised of police officers from various federal and local agencies conducted a "sweep" of the King–Kennedy Metropolitan Housing Project in Cleveland, Ohio, on October 18, 1989, at 6:30 p.m., following complaints of drug trafficking in the area. The housing project consists of apartments grouped around an open courtyard, and the design allows a person on one floor to observe activity on another floor without difficulty. The "sweep" consisted of a check of the public areas of the housing project, and George Oliver, a transit policeman attached to the task force, participated. Oliver was not given any specific instructions, and he was investigating suspicious activity on the second floor of the project when he spotted a man on the third floor—about twenty yards away—apparently throwing away material onto the second floor roof. He climbed to the third floor to investigate, and he saw the man throw more material onto the roof. Oliver identified Prior as the man who had been throwing away the material, and he approached Prior and another man with his gun drawn, produced his badge and introduced himself as a police officer. He held Prior and the other man at gunpoint until other police officers arrived, and then he climbed down to the second floor roof and recovered the material discarded previously. The material proved to be crack, and Prior was arrested and charged.

Prior argued at his suppression hearing that the crack recovered should be excluded from evidence because Oliver lacked probable cause to arrest him, and thus the evidence had been seized illegally. The District Court disagreed, and characterized Oliver's action as an investigatory "*Terry* stop" instead. Prior requested a jury trial and was convicted on both counts. In addition, over Prior's objections, the District Court asked the jury to determine the quantity of crack possessed by Prior. The jury found that Prior possessed more than fifty grams of crack, and consequently the District Court sentenced Prior to 151 months in prison (base offense level of 32 with a two-point enhancement for possessing crack cocaine within 1000 feet of a school, combined with a criminal history category of I). He has appealed.

■ Prior claims on appeal that the District Court erred in refusing to suppress the crack recovered because Oliver lacked the probable cause necessary to arrest Prior. The District Court refused to exclude the evidence because it characterized Oliver's action as an investigatory "*Terry* stop," and not a formal arrest requiring probable cause. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Sixth Circuit applies a two-part test to determine whether a seizure is an investigative stop or an arrest, and both parts examine the reasonableness of the stop under the circumstances. Our decision in *United States v. Hardnett*, 804 F.2d 353 (6th Cir. 1986), *cert. denied*, 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987), describes the test:

The reasonableness is determined by examining two factors:

(1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances. 804 F.2d at 356. Both parts must be judged against an objective standard. *Id.*

Oliver's action satisfies the requirements needed for a valid investigatory stop. Oliver owed his presence at the housing project to a drug sweep following complaints about drug trafficking in the area, and he observed a man throwing away material as the task force checked the public areas of the project. The man was in a

public area, and Oliver observed the man's behavior at a distance of only twenty yards. Since the man Oliver observed was Prior, the circumstances were both specific and suspicious enough to merit further investigation. Indeed, as the Supreme Court noted in another *"Terry* stop" case:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Oliver did nothing more than "maintain the status quo momentarily" until he could determine what Prior had discarded. When other officers arrived, he climbed down to the second floor roof and recovered the material—which turned out to be crack.

■ Prior argues that Oliver's use of a gun converted the investigatory stop into an arrest, but we have rejected this argument elsewhere. *See United States v. Lane,* 909 F.2d 895 (6th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 977, 112 L.Ed.2d 977 (1991) (police officer's display of weapon during investigatory stop does not convert stop into arrest); *Hardnett, supra* (same). Prior was accompanied by another man, and Oliver was alone. Oliver did not know whether either man was armed, and he identified himself as a police officer before detaining the two men. Thus Oliver's display of his gun was reasonably necessary for his own personal safety, and his behavior was prudent under the circumstances. 909 F.2d at 899 (police officer's display of weapon in apartment building known for drug trafficking with unknown number of unauthorized persons in building).

■ Prior also urges that the District Court erred in refusing to suppress a statement made by Prior during his detention by Oliver. Oliver testified that Prior had said that "I shouldn't have come up here, I shouldn't have come up here. With the amount of crack I had on me, I'll get ten years." *Joint Appendix* at 35. Prior's statement was not a response to any interrogation conducted by Oliver, and thus its admission presents no constitutional problem. *See Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *United States v. Ayotte,* 741 F.2d 865 (6th Cir.), *cert. denied,* 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984).

Prior argues next that the District Court erred in submitting to the jury the question of the quantity of crack involved, and he argues further that the District Court erred in believing that it was bound by the jury's finding with regard to quantity.

■ In an opinion by Judge Guy, our court has held that the "quantity" of drugs involved is not an element of the charged offense under 21 U.S.C. § 841, and thus the question of quantity is a fact to be found by the sentencing judge during the sentencing process. *United States v. Moreno,* 899 F.2d 465, 473 (6th Cir.1990) (court "not bound" by jury verdict on quantity of drugs and committed error by considering itself bound at sentencing by the jury's finding). We recently affirmed the refusal of a district court to submit the quantity question to the jury in another cocaine case. *United States v. Todd,* 920 F.2d 399 (6th Cir.1990). Ordinary sentencing facts require a lower burden of proof to satisfy due process than do matters which must be proved at trial. *Compare McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (preponderance of the evidence standard satisfies due process in sentencing proceeding) *with In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (beyond a reasonable doubt standard required at trial).

■ We see nothing wrong in using the jury's finding with regard to quantity as a recommended finding as to a disputed issue of fact in cases of this type, however.

No rule of criminal procedure or due process prevents a district court from using the jury as an advisory jury for this purpose. *See Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) (discussing role of jury in sentencing). Since the new sentencing code requires careful findings of fact on disputed issues, it makes sense for the District Court to seek the recommendation of the jury—based on the evidence it has heard—as to this sentencing fact although we disfavor the use of special verdicts and have reversed convictions based on the confusion caused by their use. *See United States v. Wilson,* 629 F.2d 439 (6th Cir.1980). Judge Aldrich may have believed herself bound by the jury verdict, contrary to our holding in *Moreno.* We are unsure on this point, based on the record, and the sentencing judge must exercise independent judgment in sentencing. *United States v. Davern,* 937 F.2d 1041 (6th Cir.1991). Accordingly, we **VACATE** the sentence imposed and **REMAND** for resentencing with instructions that the District Court may use the jury verdict as a recommended finding of fact with regard to the quantity of drugs involved, but it may only treat the verdict as a recommendation.