**UNITED STATES of AMERICA, Plaintiff–Appellee,**

v.

**Thomas Allen RUSSELL, Defendant–Appellant.**

**No. 91–7020.**

United States Court of Appeals, Tenth Circuit.

April 21, 1992.

Joseph F. Wilson, Asst. U.S. Atty., Muskogee, Okl., on the brief for plaintiff-appellee.

Mark Green, Muskogee, Okl., on the brief for defendant-appellant.

Before SEYMOUR and BRORBY, Circuit Judges, and BROWN,* District Judge.

BRORBY, Circuit Judge.

Mr. Russell[2] was convicted of three felonies including conspiracy to possess and distribute methamphetamine, use of a communication facility to facilitate the distribution of methamphetamine, and the distribution of methamphetamine. Mr. Russell appeals only his conspiracy conviction asserting insufficient evidence exists to support this conviction. We affirm.

2. Mr. Russell was a co-defendant of Mr. Stanberry, whose conviction and sentence we affirmed in *United States v. Stanberry,* 963 F.2d 1323 (10th Cir.1992), and Ms. Coyote, whose conviction we affirmed in *United States v. Coyote,* 963 F.2d 1328 (10th Cir.1992).

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

## I.

█ When a claim of insufficiency of the evidence is made, we examine the entire record, including both direct and circumstantial evidence, drawing therefrom the reasonable inferences. After examining such evidence, we must affirm if the evidence and the reasonable inferences, examined in the light most favorable to the government, are such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *United States v. Cox,* 929 F.2d 1511, 1514 (10th Cir.1991).

█ The evidence in a drug conspiracy prosecution must prove two or more persons agreed to violate the federal narcotics laws, the defendant knew at least the essential objectives of the conspiracy, and the defendant knowingly and voluntarily became a part of the conspiracy. *United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.1988).

A review of the evidence reveals the undercover narcotics agent began making regular purchases of methamphetamine from Mr. Stanberry in 1988. Mr. Stanberry told the narcotics agent that if he (Stanberry) was not available when the illegal drugs were required, he should contact his friend and neighbor, Mr. Russell. The agent frequently followed this procedure. On occasion, Mr. Russell was present when the narcotics agent purchased methamphetamine from Mr. Stanberry. On one occasion, Mr. Russell was present when Mr. Stanberry pulled the purchased methamphetamine from the water jug that Mr. Stanberry had cleverly modified to carry concealed methamphetamine. On yet another occasion, the narcotics agent called Mr. Russell and asked him to relate to Mr. Stanberry that he wished to purchase one ounce of pure methamphetamine. Because Mr. Stanberry was absent, the narcotics agent went directly to Mr. Russell's home to purchase the methamphetamine. Shortly after the agent's arrival, Mr. Russell drove up on a three-wheeler having come from Mr. Stanberry's home, a short distance away. Mr. Russell had gone to Mr. Stanberry's to get the methamphetamine which he then sold to the narcotics agent.

Mr. Russell told the narcotics agent that on most occasions when Mr. Stanberry was unavailable, Mr. Stanberry would tell him where the methamphetamine was hidden. Additionally, the narcotics agent testified he made numerous telephone calls to Mr. Russell asking him to set up a trip to California with Mr. Stanberry in order that they could purchase a large quantity of methamphetamine. All of these acts occurred in 1988 and are sufficient to enable a reasonable jury to find the existence of the conspiracy and Mr. Russell's participation therein beyond a reasonable doubt.

█ Mr. Russell tacitly concedes the formation of the conspiracy in 1988 and his participation therein. However, he asserts there is insufficient evidence to establish his continued participation in the conspiracy through August 14, 1990. Mr. Russell's argument is based upon a flawed legal assumption. During the existence of a conspiracy, each member of the conspiracy is legally responsible for the crimes of fellow conspirators. *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). Of course, a conspirator is only responsible for the crimes of the conspirators that are committed in furtherance of the conspiracy. As stated by the Supreme Court, conspirators are responsible for crimes committed "within the scope of the unlawful project" and thus "reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Id.* at 647–48, 66 S.Ct. at 1184–85. Stated somewhat differently, a conspiracy, once instituted, continues to exist until it is abandoned, succeeds, or is otherwise terminated by some affirmative act, such as withdrawal by the defendant. "The time at which a conspiracy ends depends upon the particular facts of [each] case." *United States v. Silverstein,* 737 F.2d 864, 867 (10th Cir.1984).

█ In the case before us, the evidence is overwhelming that Mr. Russell was a part of a conspiracy formed in 1988 to possess and distribute methamphetamine. Because of this, Mr. Russell remains legally responsible for the crimes of his fellow conspirators as there exists no evidence in

the record even tending to show Mr. Russell or his fellow conspirators terminated or otherwise ended the conspiracy. Ample evidence exists in the record that would enable the jury to find Mr. Russell guilty of conspiracy as charged in the indictment, including the allegation that the conspiracy existed from March 1988 until August 14, 1990.

## II.

Mr. Russell also argues insufficient evidence exists to establish he was a part of the conspiracy in 1990 for sentencing purposes. This argument is predicated upon the fact the Sentencing Guidelines were amended in 1989 to provide a longer sentence than was possible under the pre–1989 Sentencing Guidelines. These contentions have been fully discussed in *United States v. Stanberry*, 963 F.2d 1323 (10th Cir.1992), which is dispositive.

While not necessary to our disposition of this case, we nevertheless look at the evidence concerning the continuation of the conspiracy until 1990. We hold that on numerous occasions in 1988 Mr. Stanberry told the narcotics agent his source of methamphetamine was in California; Mr. Stanberry sometimes received as much as two pounds from California; the parcel that was addressed to Ms. Coyote at Mr. Stanberry's address, which Mr. Stanberry received in August 1990, contained one pound of methamphetamine and had been mailed from California; and when the items were seized pursuant to the search warrant in 1990, they were the same items utilized by Mr. Stanberry in 1988 in the presence of Mr. Russell for the purposes of concealing, packaging, carrying, and distributing the methamphetamine.

The factual determination whether a conspiracy continued until August 14, 1990, was a question for the sentencing court. *See United States v. Williams*, 897 F.2d 1034, 1039–40 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991). As we stated in *Stanberry,* the termination date of the conspiracy was a sentencing factor that related only to the determinations of the sentence

and had no bearing upon the guilt or innocence of Mr. Russell. The recited evidence clearly would enable the sentencing court to conclude a conspiracy existed and continued to exist until August 1990. A defendant bears the burden of establishing withdrawal from a conspiracy. *United States v. Parnell,* 581 F.2d 1374, 1384 (10th Cir. 1978), *cert. denied,* 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979). The record contains no evidence that Mr. Russell ever withdrew from the conspiracy nor that the conspiracy was in any way ended. A defendant is accountable for drug quantities associated with a conspiracy provided those quantities were "within the scope of, and reasonably foreseeable in connection with, the criminal activity he jointly agreed to undertake with his coconspirators." *United States v. Reid,* 911 F.2d 1456, 1462 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). *See also* Sentencing Guideline § 1B1.3, comment, n. 1. The sentencing court properly based the sentencing calculations upon the quantity of methamphetamine involved in the conspiracy including the one pound received by Ms. Coyote and Mr. Stanberry in August 1990.

The judgment of the District Court is AFFIRMED.