**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harold Junior STANBERRY,
Defendant–Appellant.**

**No. 91–7021.**

United States Court of Appeals,
Tenth Circuit.

April 21, 1992.

Joseph F. Wilson, Asst. U.S. Atty., Muskogee, Okl., for plaintiff-appellee.

Craig P. Bryant, Asst. Federal Public Defender, Tulsa, Okl., for defendant-appellant.

Before SEYMOUR and BRORBY, Circuit Judges, and BROWN,* Senior District Judge.

BRORBY, Circuit Judge.

Mr. Stanberry was convicted of thirteen felony counts which included one count of conspiracy to possess and distribute methamphetamine and twelve other drug related counts. On appeal, Mr. Stanberry asserts the trial court committed two errors: First, it failed to submit a special interrogatory to the jury inquiring as to the time the conspiracy ended; and second, the trial court improperly calculated his base offense level by applying a version of the Sentencing Guidelines which was in effect at the conclusion of the conspiracy rather than the version in effect at the commencement of the conspiracy. We affirm.

The nature of this appeal is such we need not review the evidence in detail as no

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

claim is made concerning the sufficiency of the evidence; however, a generalized statement of the evidence is necessary for a discussion of the issues. In 1988, Mr. Stanberry was living with his then girlfriend, Stacy Coyote. Mr. Stanberry's activities caused him to come to the attention of the Drug Task Force and before long, an undercover agent was making regular purchases of significant quantities of methamphetamine from Mr. Stanberry. Some of these purchases were made through Mr. Russell, a co-defendant and co-conspirator who also sold methamphetamine directly to the undercover agent. Ms. Coyote[1] also helped Mr. Stanberry. These sales and purchases were made during a six month period from March through August 1988. The agent made no purchases from Mr. Stanberry, Mr. Russell or Ms. Coyote after August 1, 1988.

In August 1990, two years later, a parcel from California addressed to Ms. Coyote at Mr. Stanberry's residence was intercepted and found to contain approximately one pound of methamphetamine. Postal inspectors, together with members of the Drug Task Force, made a controlled delivery of the parcel to Mr. Stanberry who accepted delivery, carried the parcel back to his residence, and displayed it to Ms. Coyote. A search warrant for Mr. Stanberry's residence was obtained and, while the parcel was not found, various items used in the preparation, concealment, delivery and packaging of methamphetamine were found. The undercover agent identified this paraphernalia as the same items utilized by Mr. Stanberry during his 1988 drug sales.

I

*The Special Interrogatory*

The indictment, in Count I, charged a conspiracy to commit drug offenses, i.e., the possession of methamphetamine with the intent to distribute and the distribution of methamphetamine, from March 1988 through August 14, 1990. The evidence established that a majority of the drug transactions, both by number and by weight, occurred in 1988 and a minority occurred in 1990. The 1990 conduct involved the receipt of the one pound of methamphetamine.

At the instruction conference Mr. Stanberry's counsel had no objections to the instructions; however, he offered a special interrogatory which the trial court rejected. The offered special interrogatory asked the jury, if they found Mr. Stanberry guilty of the conspiracy charge, whether they believed his involvement in the conspiracy terminated in August 1988 or in August 1990. Mr. Stanberry contended at the sentencing proceedings that as a majority of the drug transactions by weight occurred in 1988, the 1988 Sentencing Guidelines should apply. Mr. Stanberry now asserts the time hiatus creates a question of fact concerning sentencing. He also contends that if his involvement in the conspiracy terminated in 1988, the quantity of methamphetamine found in the package in 1990 would have been excluded from the computation of the base offense level for the conspiracy count. Mr. Stanberry further asserts the failure of the trial court to submit the special interrogatory to the jury was a violation of his right to Due Process.

Prior to beginning our analysis we note several facts. This is not a case where the use of a general verdict rendered the guilty verdict uncertain such as was the case in *Newman v. United States*, 817 F.2d 635 (10th Cir.1987). Furthermore, Mr. Stanberry does not contend the evidence was insufficient to convict. In fact, he candidly concedes he is guilty of committing the conspiracy. Moreover, none of the counts contained in the indictment charge Mr. Stanberry concerning any specified quantity of methamphetamine in August 1990.

■ For the sake of simplicity, we restate Mr. Stanberry's issue as whether due process requires a special factual finding

---

1. Mr. Russell and Ms. Coyote were also convicted of the conspiracy count and some of the other charges. We affirmed their convictions in

*United States v. Russell,* 963 F.2d 1320 (10th Cir.1992), and *United States v. Coyote,* 963 F.2d 1328 (10th Cir.1992).

from the jury regarding sentencing factors. We hold it does not. A defendant charged with having engaged in a drug related conspiracy is not entitled to have special interrogatories which are relevant only to sentencing factors.

■ It is axiomatic that the facts relevant to guilt or innocence are for a jury to decide and that the facts relevant to sentencing are for the sentencing court to decide. *United States v. Puryear*, 940 F.2d 602, 603 (10th Cir.1991). The Sentencing Guidelines require both the prosecution and the defendant to respond to a presentence report and to identify any issues in dispute. When factors important to the sentencing determination are reasonably in dispute, the sentencing court must then resolve these issues in accordance with Fed.R.Crim.P. 32(a)(1). The sentencing court may even consider relevant information which a jury would not have been allowed to hear. Sentencing Guidelines § 6A1.3. We have held that the sentencing court makes this factual determination utilizing a preponderance of the evidence standard, *United States v. Easterling*, 921 F.2d 1073, 1077 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991); *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990), which is something far removed from the "beyond a reasonable doubt" standard a jury must employ to convict.

The drug crimes charged in the indictment are not quantity dependent. The jury was not required to make a quantity finding to return a verdict of guilty. The sentencing judge is, however, obligated to make a quantity determination in calculating and imposing the sentence.

The basic fact question is the termination date of the conspiracy. This too is a sentencing factor which relates only to the calculus of the sentence rather than to the issue of guilt or innocence. We are not alone in so holding. Other circuits con-

fronted with the issue of Sentencing Guidelines applicability have likewise treated the termination date of a continuing crime, such as conspiracy, as a finding to be made by the sentencing court. *United States v. Underwood*, 932 F.2d 1049, 1054 (2d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *United States v. Watford*, 894 F.2d 665, 670 (4th Cir.1990); *United States v. Rosa*, 891 F.2d 1063, 1068–69 (3d Cir.1989).[2]

In the case before us the sentencing court made the factual determination the conspiracy continued until August 14, 1990. Mr. Stanberry properly makes no contention this finding lacks substantial support in the record.

We hold the Constitution and applicable law impose no duty upon the trial court to submit a special interrogatory to the jury concerning a disputed fact issue which bears only upon a sentencing factor.

## II

### The Sentence

■ Mr. Stanberry argues that the sentencing court utilized the wrong version of the Sentencing Guidelines in calculating his base offense level. The base offense level specified in the 1988 Guidelines is four levels lower than the base offense level which went into effect on November 1, 1989. The sentencing court applied the 1989 Guidelines. During oral argument, Mr. Stanberry's counsel urged us to apply the 1988 Guidelines levels since the majority of the drug transactions occurred in 1988 rather than in 1990. We find no merit to Mr. Stanberry's assertions.

■ The sentencing court found the conspiracy was still in effect in August 1990. This finding was not clearly erroneous, nor has any contention been made it is. Mr. Stanberry remained a part of the ongoing criminal conspiracy absent an affirma-

---

2. We do not address the issue of whether the sentencing court may seek the jury's guidance on a sentencing factor. We note three cases where special verdicts have been permitted. *United States v. Owens*, 904 F.2d 411, 414–15 (8th Cir.1990); *United States v. McNeese*, 901 F.2d 585, 605 (7th Cir.1990); and *United States v. Buishas*, 791 F.2d 1310, 1317 (7th Cir.1986). Notably, however, special verdicts of this type promise increased complexity and may debase the Sentencing Guidelines.

tive withdrawal. *United States v. Record,* 873 F.2d 1363, 1368 (10th Cir.1989). There exists no evidence, not even a scintilla, that Mr. Stanberry withdrew. The offense conduct attributable to Mr. Stanberry occurred after November 1, 1989, the effective date of the Sentencing Guidelines used by the sentencing court in determining Mr. Stanberry's base offense level. When a conspiracy begins during a period where the application of certain Guidelines would be controlling and extends into a period when another Guideline application would be appropriate, there is no violation of the *ex post facto* clause in applying the Guidelines in effect at the time of the last act of the conspiracy. *United States v. Shewmaker,* 936 F.2d 1124, 1130 (10th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *United States v. Williams,* 897 F.2d 1034, 1040 (10th Cir. 1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991). The crime of conspiracy is a continuing crime and is not complete until withdrawal or termination. Had Mr. Stanberry wished to avoid the harsher sentencing provisions, he could have withdrawn from the conspiracy prior to the effective date of the later Guideline provisions.

The judgment and the sentence are AFFIRMED.

SEYMOUR, Circuit Judge, concurring.

I concur in most of the court's opinion. I write separately because I see no basis in either logic or experience for the dicta regarding special verdicts on sentencing factors, *see* majority opinion at 1326 n. 2. Now that sentencing courts must make a number of particularized findings of fact under the Sentencing Guidelines, *see e.g.,* Guidelines, §§ 2B1.1(b)(1) (loss calculation), 2D1.1 (drug quantity), 3B1.1 (organizer, leader, manager, or supervisor of criminal activity), those courts may desire the impressions of juries which have carefully heard and evaluated the evidence.

The defendant, of course, has "no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact," *McMillan v. Pennsylvania,* 477 U.S. 79, 93, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986), and the district court therefore commits no error when it refuses to submit a special interrogatory to the jury, *United States v. Smith,* 938 F.2d 69, 70 (7th Cir.), *cert. denied,* ── U.S. ──, 112 S.Ct. 254, 116 L.Ed.2d 208 (1991). Even when it does seek the jury's recommendation on sentencing-related facts, the court remains responsible for making findings on its own independent assessment of the evidence. *United States v. Levy,* 955 F.2d 1098, 1106 (7th Cir.1992). The court's parameters in this task are less restrictive than those of the jury. The court may consider information unavailable to the jury and "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Sentencing factors, moreover, need only be proven by a preponderance of the evidence. Accordingly, the court's findings may well differ from the jury's. *See United States v. Jacobo,* 934 F.2d 411, 417–18 (2d Cir.1991). So long as courts do not accept the juries' findings as conclusive in matters relevant to sentencing, however, *see United States v. Prior,* 941 F.2d 427, 430–31 (6th Cir.) (remand with instructions that district court may use jury verdict on quantity of drugs only as recommendation), *cert. denied,* ── U.S.──, 112 S.Ct. 613, 116 L.Ed.2d 635 (1991); *Jacobo,* 934 F.2d at 416–18 (sentencing court not bound by jury verdict on drug quantity), I see absolutely no harm in the court asking the jury for guidance in the form of special interrogatories.

The use of such advisory juries is now common in a number of courts, including but not limited to the cases cited by the majority. *See, e.g., Prior,* 941 F.2d 427; *Smith,* 938 F.2d 69; *Jacobo,* 934 F.2d 411. A court that asks the jury's view of sentencing factors does not thereby abdicate its responsibility[1] for making the ultimate determinations of those facts, nor does it

1. Indeed, as discussed above, it *may not.*

limit in any way its ability to apply appropriate guidelines to the facts it finds. I am therefore at a loss as to the meaning of the majority's assertion, unsupported by either law or example, that special verdicts "promise increased complexity and may debase the Sentencing Guidelines." I respectfully disagree.