USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS For The First Circuit ____________________ No. 92-1200 UNITED STATES OF AMERICA, Appellee, v. CARLOS VALENCIA-LUCENA, Defendant, Appellant. ____________________ No. 92-1201 UNITED STATES OF AMERICA, Appellee, v. JOSE MANUEL BASTIAN-CORTIJO, a/k/a CHEO, Defendant, Appellant. ____________________ No. 92-1202 UNITED STATES OF AMERICA, Appellee, v. ROBERTO LABOY-DELGADO, Defendant, Appellant. ____________________ No. 92-1203 UNITED STATES OF AMERICA, Appellee, v. EDWIN CARPIO-VELEZ, Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this Court issued on March 2, 1993, is ammended as follows: Page 16, footnote 6, line 5, should read: ". . . fare better . . ." instead of " . . . fair better . . ." -2- March 2, 1993 UNITED STATES COURT OF APPEALS For The First Circuit ____________________ No. 92-1200 UNITED STATES OF AMERICA, Appellee, v. CARLOS VALENCIA-LUCENA, Defendant, Appellant. ____________________ No. 92-1201 UNITED STATES OF AMERICA, Appellee, v. JOSE MANUEL BASTIAN-CORTIJO, a/k/a CHEO, Defendant, Appellant. ____________________ No. 92-1202 UNITED STATES OF AMERICA, Appellee, v. ROBERTO LABOY-DELGADO, Defendant, Appellant. ____________________ -1- No. 92-1203 UNITED STATES OF AMERICA, Appellee, v. EDWIN CARPIO-VELEZ, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jaime Pieras, Jr., U.S. District Judge] ___________________ ____________________ Before Torruella and Stahl, Circuit Judges, ______________ and Skinner,* District Judge. ______________ _____________________ Carlos L pez-de Azua, with whom Lou Ann Delgado, was on ______________________ ________________ brief for appellant Valencia-Lucena. Julia M. Garriga, by Appointment of the Court, for appellant ________________ Basti n-Cortijo. Lydia Lizarr bar-Masini for appellant Laboy-Delgado. _______________________ Thomas M. Dawson for appellant Carpio-V lez. ________________ Jorge E. Vega-Pacheco, Assistant United States Attorney, _______________________ with whom Daniel F. L pez-Romo, United States Attorney, and Jos ____________________ ____ A. Quiles-Espinosa, Senior Litigation Counsel, were on brief for __________________ appellee. ____________________ March 2, 1993 ____________________ ____________________ * Of the District of Massachusetts, sitting by designation. TORRUELLA, Circuit Judge. In a previous appeal we _____________ affirmed the convictions of Carlos Valencia-Lucena, Edwin Carpio- V lez, and Jos Basti n-Cortijo under 21 U.S.C. 846 for conspiring to possess with intent to distribute 137.2 kilograms of cocaine and under 21 U.S.C. 963 for conspiring to import into the United States 137.2 kilograms of cocaine and we affirmed the conviction of Roberto Laboy-Delgado on the latter offense. However, we vacated the sentences and remanded for resentencing because the district court failed to determine the amount of cocaine involved for the purpose of sentencing. In so doing, we directed the district court to conduct an evidentiary hearing on that issue. United States v. Valencia-Lucena, 925 F.2d 506 (1st _____________ _______________ Cir. 1991). On remand, the parties stipulated that the evidence would be the same as heard at trial. The district court determined that the amount of cocaine for the purpose of setting the base offense level was 137.2 kilograms of cocaine and resentenced the defendants. This appeal followed. Appellants claim that the new factual finding constitutes clear error. They argue that the district court is bound by its prior determination that the evidence was insufficient and unreliable to sentence on the basis of 137.2 kilograms since the government offered no new evidence as to amount. Appellants Basti n-Cortijo, Laboy-Delgado, Carpio-V lez argue that the district court failed to give specific reasons for its finding that the amount of cocaine was foreseeable, and -3- further that the evidence was insufficient to support such a finding. Finally, appellants maintain that the district court improperly denied appellant Valencia-Lucena's document request at the resentencing hearing, given the court's new determination on the amount involved. We affirm the district court's findings with respect to the amount of cocaine used to determine the base offense level as well as its denial of further document discovery, but remand for specific findings on foreseeability. I. FACTUAL BACKGROUND I. FACTUAL BACKGROUND As this appeal concerns the district court's findings upon resentencing, we provide only a summary of the facts; our earlier opinion recounts the history more fully. See Valencia- ___ _________ Lucena, 925 F.2d 506. The four appellants participated with ______ others not part of this appeal in a scheme to fly cocaine via private aircraft from Colombia, South America to the United States through the Virgin Islands. Valencia-Lucena piloted the aircraft from Puerto Rico to Colombia, returning with the cocaine to the drop point in the Virgin Islands. Basti n-Cortijo was the "kicker"; he acted as the bombardier, allegedly dropping ten (10) igloo coolers containing twenty (20) kilograms of cocaine to retrieval boats waiting below. Carpio-V lez appeared at various times during the conspiracy; he apparently repaired some wiring on one of the retrieval boats and was alleged to have owned the cocaine at one point. Laboy-Delgado repaired mechanical problems with the boats. The government foiled the plot with the assistance of a coconspirator turned confidential informant. -4- Initially the government indicted appellants based on the coconspirator, confidential informant's estimate that the object of the conspiracy was the importation of 200 kilograms of cocaine. A first superseding indictment reduced the amount to 173.2 kilograms. A second superseding indictment further reduced the amount to 137.2 kilograms, the amount of cocaine recovered by the government some days after the arrests. At trial, the district court refused to admit into evidence the amount of cocaine involved in the conspiracy because it viewed the links between the seized cocaine and the defendants as weak, and believed admission of the evidence would unfairly prejudice the defendants. The district court understood that determining the actual amount was not necessary to convict on the conspiracy charges. The district court sentenced codefendant Jos Llad - Ortiz first.1 The district judge subsequently clarified the findings made at that hearing in its opinion and order of December 28, 1989. The district court then applied these findings to appellants. It was unclear to us how the district court arrived at his initial sentences. When challenged by the government, the district court adopted the government's position that 137.2 kilograms were to be used for calculation of the base offense level, but then proceeded to depart downward based "on the government's failure to adequately prove that the 137.2 kilograms ____________________ 1 Llad -Ortiz is not part of this appeal. -5- of cocaine, found in coolers the government seized, was the cocaine the defendants conspired to import." United States v. ______________ Jos Llad -Ortiz, Crim. No. 89-002, slip op. at 5 (D.P.R. Dec. _________________ 28, 1989). The district court further supported the downward departure by stating that the government's case agent falsely testified before the grand jury. This latter reason was in the manner of punishment. The court concluded that "[u]pon reviewing the evidence at trial, we do not find it sufficient to sentence the defendants according to a quantity based on the 137.2 figure." Id. ___ Under the applicable United States Sentencing Guidelines at the time of sentencing, the base offense level for 137.2 kilograms of cocaine was 36. United States Sentencing Guidelines, Guidelines Manual, 2D1.4 & 2D1.1(a)(3) (Nov. 1 _________________ 1989) (Drug Quantity Table). The district court increased the total offense level of Valencia-Lucena to 38 for his use of a special skill in piloting the aircraft, U.S.S.G. 3B1.3, and reduced the offense levels of Carpio-V lez, Basti n-Cortijo and Laboy-Delgado to 34 for their minor roles in the conspiracy, U.S.S.G. 3B1.2(b). As a result of the downward departure, the district court sentenced all appellants to 120 months imprisonment. In the previous appeal we rejected the district court's departure based on its "perceived need to reprimand the government," holding that departure is not warranted by the conduct of third parties. More important to this appeal, we -6- remanded for resentencing because the district court purported to accept the government's contention that 137.2 kilograms were involved for purposes of determining the base offense level, but then departed downward because it deemed the evidence an insufficient basis upon which to sentence. We said that the district court expressly stated that it did not believe the government's contention that 137.2 kilograms was involved, which clearly indicates that the court was never convinced of the reliability of the government's evidence. The amount set by the government should not, therefore, have been adopted by the court in the first instance without having conducted an evidentiary hearing in order to reach a reliable determination as to the amount of cocaine. Valencia-Lucena, 925 F.2d at 516. _______________ On remand, the district court held a hearing on September 10, 1991 to determine the amount of cocaine involved in the conspiracy to be used to set the base offense level. The parties stipulated that the evidence was to be the same as that given at trial. On October 28, 1991, appellants jointly filed a pro se motion requesting the district court to subpoena a number ___ __ of items relating to the amount.2 On October 30, 1991, the ____________________ 2 The documents requested included the following: (1) Certified logbook from U.S. Coast Guard; (2) certified logbook from British Virgin Islands police vessel St. Ursula; (3) certified logbook from Tortola Harbor; and (4) certified logbook from Spanish Town Harbor from December 31, 1988 to January 10, 1989; (5) a copy of DEA Form 473 describing the government's agreements with confidential informant Rafael Manuel V zquez, a/k/a Robert Victor ("V zquez"); (6) FBI and NCE reports on V zquez; (7) all criminal complaints and records on V zquez in Puerto Rico, St. Thomas, and the United States; (8) Drug rehabilitation services and centers -7- district court found that the government had sustained its burden of proving that 137.2 kilograms were involved on the basis of the testimony of the confidential informant and because evidence not admissible at trial may be considered for the purpose of sentencing. Apparently this finding took appellants by surprise. At the January 15, 1992 sentencing hearing, the attorneys for appellants argued that the district court was bound by its prior determination that the evidence as to amount was insufficient and unreliable for the purpose of sentencing. Alternatively, they requested that resentencing be postponed and that the renewed discovery request be granted to enable appellants to offer more evidence rebutting the government's evidence on the amount of cocaine. The district court denied the motion and resentenced the appellants based on a finding that 137.2 kilograms of cocaine were involved in the conspiracy. Under the applicable Sentencing Guidelines the base offense level was 36. Valencia-Lucena received a two level increase for the use of his skill as a pilot. The Guidelines provide a term of imprisonment ranging from 235 to 293 months for that offense level. He was resentenced to 235 months imprisonment. Basti n-Cortijo, Carpio- V lez, and Laboy-Delgado had their base offense level reduced to 34 for their minor roles in the offense. The range of terms of ____________________ attended by V zquez; and (9) any polygraph test taken by V zquez and related data. -8- imprisonment was 151 to 181 months. They were resentenced to 151 months. II. DISCUSSION II. DISCUSSION A. Base Offense Level __________________ The crux of appellants' argument is that the district court was bound by its prior determination that the evidence as to the amount was insufficient and unreliable, and therefore, the district court should have based the base offense level on the minimum amount. We disagree. We thought our earlier ruling rather straight-forward and clear. We held that the district court never made a factual _____ ____ determination as to the amount involved in the conspiracy. Valencia-Lucena, 925 F.2d at 515-16. Consequently, we directed _______________ the district court to hold an evidentiary hearing on that issue. The district court followed our mandate. It held a hearing at which the parties stipulated that the evidence would be the same as at trial. That stipulation was appellants' fatal mistake. They assert on appeal that the district court is bound by its previous finding on the same evidence. But there simply was no finding by which the district court could be bound. We plainly said so in the previous appeal: "[t]he district court failed to determine the reliability of the evidence as to the quantity of cocaine which was used." Id. at 515. ___ When the quantity of drugs used for the base offense level is in dispute, the district court must make an independent finding at an evidentiary hearing as to the reliability of the -9- evidence. Valencia-Lucena, 925 F.2d at 515-16; United States v. _______________ _____________ Zuleta-Alvarez, 922 F.2d 33, 36 (1st Cir. 1990), cert. denied, ______________ ____ ______ 111 S. Ct. 2039 (1991); U.S.S.G. 6A1.3(a). In Zuleta-Alvarez, ______________ we acknowledged the importance of the evidentiary hearing on the amount of drugs used since quantity is a critical factor in determining length of imprisonment. Defendants in a drug prosecution cannot be expected to offer evidence on the quantity of illicit drugs while simultaneously arguing that they were not involved with any drug transaction. Zuleta-Alvarez, 922 F.2d at ______________ 36 (citing Chief Judge Breyer, "Federal Sentencing Guidelines and the Key Compromises upon which They Rest," 17 Hofstra L. Rev. 1, 10 (1988)). The evidentiary hearing held exclusively for the purpose of sentencing provides this necessary opportunity. We remanded specifically for this purpose. At the evidentiary hearing the government must prove the amount of cocaine involved by the preponderance of the evidence. United States v. Cetina-G mez, 951 F.2d 432, 435 (1st _____________ ____________ Cir. 1991); United States v. Rodr guez-Cardona, 924 F.2d 1148, _____________ _________________ 1155 (1st Cir.), cert. denied, 112 S. Ct. 54 (1991); United ____ ______ ______ States v. Wright, 873 F.2d 437, 441 (1st Cir. 1989); see also ______ ______ _________ United States v. Sims, 975 F.2d 1225, 1242-43 (6th Cir. 1992). ______________ ____ At sentencing, the district court may consider "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. 6A1.3(a); see United States v. Figaro, 935 ___ _____________ ______ -10- F.2d 4, 8 (1st Cir. 1991). "Under this generous formulation, the sentencing court has broad discretion to determine what data is, or is not, sufficiently dependable to be used in imposing sentence." United States v. Tardiff, 969 F.2d 1283, 1287 (1st _____________ _______ Cir. 1992); United States v. Iguaran-Palmar, 926 F.2d 7, 10 (1st _____________ ______________ Cir. 1991). We review the district court's determination of the quantity of drugs for which the defendant is responsible, like other factual findings in the context of the Sentencing Guidelines, for clear error. United States v. Pavao, 948 F.2d _____________ _____ 74, 77 (1st Cir. 1991); Wright, 872 F.2d at 444. The district ______ court's finding that 137.2 kilograms were involved for the purpose of calculating the base offense level did not constitute clear error. The coconspirator turned confidential informant testified that appellants conspired to possess 200 kilograms of cocaine. Appellants failed to contradict the informant's testimony. Indeed, they offered no additional evidence as to amount at the evidentiary hearing. In addition, the government recovered only 137.2 kilograms because the coolers of cocaine were dropped in the sea for retrieval; some of the coolers were apparently lost. The district court could properly consider the 137.2 kilograms retrieved for the purposes of sentencing despite the fact that the physical evidence of the coolers and cocaine was not admitted at trial because it was deemed unfairly prejudicial. This evidence, without any alternative evidence as to amount from the appellants, was a more than sufficient basis upon which to -11- resentence, as the district court did. B. Discovery Request _________________ Appellants' contend that the court should have postponed resentencing to allow them further document discovery. Appellants hoped to uncover information to challenge the government's evidence. They made this new request a month and a half after the September 10, 1991 evidentiary hearing mandated by this court. Appellants renewed the request after the district court found 137.2 kilograms to have been the object of the conspiracy. The district court denied the request. In effect, appellants request two bites at the apple. Like the district court, we are disinclined to oblige. We review the district court's denial of further discovery for clear error. Pavao, 948 F.2d at 77; Wright, 873 F.2d at 444. The district _____ ______ court enjoys wide discretion in determining relevance at sentencing hearings. Iguaran-Palmar, 926 F.2d at 10. First, ______________ appellants had their opportunity to contest the government's evidence at the September 10, 1991 hearing; they failed to take advantage of it. They cannot resuscitate that right so late in the proceedings. See Zuleta-Alvarez, 922 F.2d at 36. Second, ___ ______________ the district court properly could find that the documents requested ultimately would not affect its decision that the government's evidence on the amount was sufficient and reliable. Appellants failed to demonstrate how the documents requested would undermine the government's evidence. Both defendants and the government presented testimony and cross examined the -12- commanders of the Coast Guard vessel and the British Virgin Islands police vessel at trial; we cannot see, and appellants have failed to show, how the logbooks would have added anything to the testimony already received. The same can be said with respect to the documents requested regarding the government's confidential informant V zquez; appellants had ample opportunity to assail his credibility both at trial and at the evidentiary hearing. We cannot say that the district court was clearly erroneous in denying appellants' discovery request. -13- C. Foreseeability of the Quantity ______________________________ The district court applies the law under the guidelines applicable on the date of sentencing. 18 U.S.C. 3553(a)(4) (1985 & Supp. 1992); Isabel v. United States, 980 F.2d 60, 62 ______ ______________ (1st Cir. 1992). On December 28, 1989, the original sentencing date, U.S.S.G. 2D1.4(a), 1B1.3,3 (Nov 1, 1989) and their Application Notes4 directed the sentencing judge to consider conduct and quantities that were in furtherance of the conspiracy and reasonably foreseeable to defendants to determine the quantity of cocaine for the base offense level. United States v. _____________ Garc a, 954 F.2d 12, 15-16 (1st Cir. 1992); United States v. ______ ______________ ____________________ 3 Section 1B1.3 Relevant Conduct (Factors that Determine the ______________________________________________ Guideline Range) provides in relevant part: "(a) (ii) cross ________________ references in Chapter Two, . . . shall be determined on the basis on the following: (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense . . . ." U.S.S.G. 1B1.3 (Nov. 1, 1989). 4 The Application Note stated, "[i]n the case of criminal activity undertaken in concert with other, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable by the defendant." _______________________ U.S.S.G. 1B1.3, comment. (n.1) (Nov. 1, 1989)(emphasis added). Section 1B1.3 has been amended and clarified with respect to its various provisions on several occasions, most significantly effective November 1, 1992. The appendix states that the 1992 amendments clarify and more fully illustrate the operation of this guideline and that material was moved from the commentary to the guideline and rephrased for greater clarity. U.S.S.G App. C 439 (1992). -14- Bianco, 922 F.2d 910, 913 (1st Cir. 1991).5 ______ The government relies on United States v. Edwards, 945 _____________ _______ F.2d 1387 (7th Cir. 1991), cert. denied, 112 S. Ct. 1590 (1992), ____ ______ for the proposition that in cases in which defendants are charged with one isolated set of facts that comprise the entire conspiracy, the district court need not make individual findings with respect to each defendant. It argues that once an amount is determined for a temporally limited, small, and simple conspiracy, all defendants associated with the conspiracy should be held to foresee that amount. Edwards involved a complex and _______ sophisticated heroin retailing business that had a chain of suppliers, mid-level managers, street vendors and wholesalers. The Seventh Circuit required specific findings as to each defendant since they had joined at different times and may have intended to enter a more limited agreement. Id. at 1397. The ___ government contends that the foreseeability inquiry has always focused upon whether the disputed conduct fell outside the scope _____ of the conspiracy in factually complicated cases. We do not read Edwards to limit the foreseeability inquiry to complex _______ conspiracies. Nor do we find a principle that would sustain such ____________________ 5 We garner further support from later clarification and expansion of the application notes to U.S.S.G. 1B1.3. Application Note 2 currently states that "[w]ith respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. 3B1.3, comment. (n.2). We may consider this clarifying language at the appeal stage. Isabel, 980 F.2d at 62. ______ -15- a limitation. The criminal conspiracy net is often cast widely. Individuals may be involved who know that the agreement they have entered is illegal but have no way to foresee the magnitude or ambition of the enterprise, as in the case of an individual hired to remedy an unexpected complication in the main conspirators' plot. The Guidelines require that the government prove by a preponderance of the evidence that such individual could reasonably foresee the amount contemplated by the conspiracy. U.S.S.G. 2D1.4(a), 1B1.3. Appellants Carpio-V lez, Basti n-Cortijo, and Laboy- Delgado contend that 18 U.S.C. 3553(c) (Supp. 1992)6 requires that the district court make a specific finding of foreseeability supported by reasoning and facts in the record. They argue that the district court's cursory rejection of their objection that the government failed to prove foreseeability runs afoul of this provision. The government contends that the district court made a specific finding on foreseeability, and that it was not required to provide specific, fact intensive reasons as the record amply showed that appellants knew that in excess of fifty ____________________ 6 18 U.S.C. 3553(c) requires that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence . . . ." Appellants also argue that Fed. R. Crim. P. 32(c)(3)(D) imposes that burden as well. We think that the appellants fare better under 3553(c) as Rule 32(c)(3)(D) only requires that the court make a finding. The commentary to the Rule notes that this does not impose an onerous burden. "It does not even require the preparation of a transcript." Just a finding is required; thus, appellants' reliance on Rule 32 is misplaced. See United States v. Webster, ___ _____________ _______ 960 F.2d 1301, 1310 (5th Cir.), cert. denied, 113 S. Ct. 355 ____ ______ (1992); United States v. McDowell, 918 F.2d 1004, 1013 (1st Cir. _____________ ________ 1990) (argument made academic by holding under 3553(c)). -16- (50) kilograms were involved.7 We have stated in related contexts that 3553(c) requires that when sentencing under the guidelines, a district court must make reasonably specific findings to allow for meaningful appellate review. United States v. Schultz, 970 F.2d _____________ _______ 960, 963 & n.7 (1st Cir. 1992), cert. denied, 61 U.S.L.W. 3479 ____ ______ (1993); United States v. McDowell, 918 F.2d 1004, 1012 (1st Cir. _____________ ________ 1990). Other circuits similarly require the district court to supply sufficient reasoning for its sentencing determinations. See, e.g., United States v. Negr n, 967 F.2d 68, 72 (2d Cir. ___ ____ ______________ ______ 1992) (vacating and remanding for finding on foreseeable quantity when defendant contests); United States v. Puma, 937 F.2d 151, _____________ ____ 160 (5th Cir. 1991)("The reasonable foreseeability required of 2D1.4 requires a finding separate from a finding that the defendant was a conspirator."), cert. denied, 112 S. Ct. 1165 ____ ______ (1992); United States v. Duarte, 950 F.2d 1255, 1263 (7th Cir. _____________ ______ 1991) ("a district court should explicitly state and support, either at the sentencing hearing or (preferably) in a written statement of reasons, its findings that the unconvicted activities bore the necessary relation to the convicted offense"), cert. denied, 113 S. Ct. 174 (1992); United States v. ____ ______ _____________ Guti rrez, 931 F.2d 1482, 1492 (11th Cir.) (requiring specific _________ findings), cert. denied, 112 S. Ct. 321 (1991); see also United ____ ______ _________ ______ States v. Turner, 898 F.2d 705, 709-710 (9th Cir.), cert. denied, ______ ______ ____ ______ ____________________ 7 The guidelines established a base offense level of 36 for in excess of 50 kilograms at the date of sentencing, U.S.S.G. 1D1.4, 1D1.1(a)(3) (Drug Quantity Table). -17- 495 U.S. 962 (1990).8 In the present case, the district judge said very little during the resentencing hearing and his opinion and order is not much help either. The district court stated at the sentencing hearing after appellants' lengthy argument on the foreseeability issue: "Well, independently of that . . . [i]n light of common experience, the evidence showed that there existed on Carpio[-V lez]'s part foreseeability of the amount of cocaine involved in this case." Sentencing Hearing, Valencia- _________ Lucena, Crim. No. 89-002, at 32 (Jan. 15, 1991). The court then ______ relied on this statement with respect to Basti n-Cortijo and Laboy-Delgado. Despite the paucity of words from the district court, the record provides a sufficient basis for the district court's finding of foreseeability with respect to Basti n-Cortijo. Appellant Basti n-Cortijo was found by the district court to have acted as the "kicker," which means that he flew with Valencia- Lucena from Colombia, South America transporting 10 igloo coolers filled with twenty (20) kilograms of cocaine each, and dropped the cocaine from the plane when the pilot reached the designated area. We note that Valencia-Lucena did not appeal on this ground, indeed it would have been as frivolous as we now find Basti n-Cortijo's appeal. As the "kicker," there is simply no ____________________ 8 We do not address appellant's argument with respect to which party bears the burden on the foreseeability issue as we understand the government to believe that it met that burden. See Negr n, 967 F.2d at 72-73 (placing burden on defendant to ___ ______ establish lack of foreseeability). -18- way that he could not have known that he was dropping in excess of 50 kilograms to his coconspirators below. Appellants' Laboy-Delgado and Carpio-V lez present a better case. With respect to them, the district court only found that: "The coolers [dropped by Valencia-Lucena and Basti n- Cortijo] were to be subsequently retrieved and imported into Puerto Rico with the assistance of defendants Carpio-V lez and Laboy[-Delgado]." United States v. Valencia-Lucena, No. 89-002, _____________ _______________ slip op. at 3 (D.P.R. Oct. 30, 1991). This statement is an insufficient basis for a finding of foreseeability. As we read the record, it is not strictly accurate as the evidence suggests that Carpio-V lez and Laboy-Delgado were recruited to repair the retrieval boats. The district court's failure to more fully state the evidence upon which it based its finding of foreseeability as to the amount of cocaine with respect to Carpio-V lez and Laboy- Delgado at the sentencing stage has frustrated this court's appellate task. McDowell, 918 F.2d at 1012 & n.12. We make no ________ comment on whether the record supports a finding of foreseeability on the preponderance of the evidence; this task is for the district court. We affirm the resentencing of Nos. 92-1200 and 92-1201. ______________________________________________________ We vacate and remand Nos. 92-1202 and 92-1203 for resentencing. ______________________________________________________________ -19-