USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1492 UNITED STATES OF AMERICA, Appellee, v. JAMES TAVANO, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ Kimberly Homan, with whom Sheketoff & Homan was on brief, ______________ __________________ for appellant. Brien T. O'Connor, Assistant United States Attorney, with __________________ whom A. John Pappalardo, United States Attorney, was on brief, ___________________ for appellee. _________________________ December 29, 1993 _________________________ SELYA, Circuit Judge. This appeal requires us to SELYA, Circuit Judge. ______________ clarify a sentencing court's obligations in resolving evidentiary disputes over drug quantity. Because we understand the court below to have fashioned a per se rule giving controlling effect ___ __ to trial testimony, come what may, and because the court, in fidelity to its self-hewn rule, did not meaningfully consider conflicting evidence proffered by the defense, we vacate appellant's sentence and remand for resentencing. I. BACKGROUND I. BACKGROUND We bifurcate our account of what transpired below, first elucidating the sequence of relevant events, and then placing an interpretive gloss on those events. A. The Sequence of Events. A. The Sequence of Events. ______________________ A jury found defendant-appellant James Tavano guilty of conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. 846 (1988). Dissatisfied with the outcome, appellant engaged new counsel. The probation officer proceeded to compile the presentence investigation report (PSI Report). On February 11, 1993, the PSI Report emerged. It adopted the prosecution's version of the crime, concluding that appellant's relevant conduct encompassed between five and fifteen kilograms of cocaine. Appellant's new lawyer objected to this conclusion and, on March 15, 1993, sent a letter to the probation officer spelling out discrepant representations in the grand jury 2 testimony concerning the size and frequency of certain transactions.1 The attorney argued that the proffered evidence cast the trial testimony into disrepute and, moreover, giving the proffered evidence its due, appellant could not be held responsible for more than three and one-half kilograms of cocaine.2 The prosecutor promptly fired off a detailed rebuttal letter under date of April 9, 1993. The probation officer, in turn, attached a brief addendum to the PSI Report, stating: After review of the materials submitted by both the defense and the government, the probation office feels that the calculations originally submitted in the [PSI] Report are correct and accurately reflect the amount of cocaine for which the defendant can be held accountable. The report is unchanged. The district court convened a disposition hearing one week later. Here follows, at length, the crucial exchange between defense counsel and the judge: COUNSEL: I'd like to say that I think perhaps the thing to do in this case is not to sentence, but perhaps take some time and have one of your clerks maybe go through [my March 15] submission. JUDGE: No. No. I don't want to do that. ____________________ 1By and large, this testimony originated from the same sources, and referred to the same transactions, as the trial testimony on which the probation officer and the prosecution relied. 2The prize at stake in the battle over drug quantity is no mere bagatelle. If five or more kilograms of cocaine are properly attributable to Tavano, he is subject to a mandatory minimum prison term of ten years, see 21 U.S.C. ___ 841(b)(1)(A)(ii), as opposed to a mandatory minimum sentence of five years if his alternative calculation is credited, see 21 ___ U.S.C. 841(b)(1)(B)(ii). Tavano's base offense level and guideline sentencing range are similarly affected. 3 It is not the kind of thing I would do. I have just read, I think carefully, the government's statement, which is helpful in refreshing my recollection as to what happened at the trial. You weren't here at the trial, although you did read the transcript, and I think what [the prosecutor] says is accurate. COUNSEL: Your Honor, it may be accurate but JUDGE: I don't think that I can go beyond that. In other words, I think what your point is, is that if I consider the grand jury testimony, if I consider prior inconsistent statements, I can come out a different way, but I don't think that is what I do. It seems people come to court and they testify. This is the dough issue, so to speak, as you well know, and it is the evidence that is presented at trial that controls; and, even in the most conservative efforts to try to make sure there is no double charging against your client, he comes out well above the amount that is necessary. COUNSEL: I don't think that is true. JUDGE: I am not saying I am right. I hope I am right. COUNSEL: . . . I say that you have a right to look at both of these testimonies and make the decision as to what the weight was. * * * JUDGE: . . . You didn't try the case, and I didn't try the case. I presided, and you were somewhere else. But I do think that what should control is the evidence that is presented at trial. That is where everything gets shaken down. I think that [the prosecutor's] statement of what took place at trial is reasonably presented in this April 9, 1993 submission . . .; and for purposes of the 4 record, I will adopt his statement as my findings. If I have made a mistake, then that gives you a very clear shot on appeal. That is what I am trying to do. Following this exchange, the court selected a guideline sentencing range on the basis of its finding that appellant handled between five and fifteen kilograms of cocaine, and sentenced appellant to a prison term of 121 months (the nadir of the chosen range), capped by five years of supervised release. On the order of judgment form, the court indicated its adoption of the findings suggested in the PSI Report. This appeal ensued. B. Interpreting the Sequence of Events. B. Interpreting the Sequence of Events. ___________________________________ Before appellate review can proceed, it is necessary to clarify exactly what the district judge did and exactly what he did not do. We are guided in this endeavor by the record a record that flavors the judge's words and, concomitantly, offers insights into his thinking. Appellant's principal complaint on appeal is that the district court enunciated an ironclad rule holding that, where witnesses' trial testimony and their other statements on the issue of drug quantity conflict, the former necessarily controls.3 We think this is an accurate assessment of the district court's position. For one thing, the judge himself repeatedly stated as much. He said, for example: "I don't think that I can go beyond [the evidence at trial]. . . . I don't think that [considering inconsistent statements made prior to ____________________ 3Appellant also attacks the adequacy of the district court's findings. That attack fails. See infra Part II(B). ___ _____ 5 trial] is what I do. . . . [I]t is the evidence that is presented at trial that controls. . . . [W]hat should control is the evidence that is presented at trial." These are categorical pronouncements reflecting careful thought, not statements in any way qualified or specially tailored to the facts of the case.4 While some individual phrases, taken in isolation, may be either ambiguous or subject to benign explanation, the cumulative import of these statements, read in context, is unmistakable. For another thing, the judge's actions speak as loudly as his words and they speak to the same end. Insofar as the record reflects, the judge never read or, at least, never analyzed, the defense's submission, presumably because he regarded it as irrelevant. In contrast, the judge read the government's submission on the bench and credited it because it jibed with his recollection of the trial testimony. Of critical importance, the judge did not act as if he were making a case- specific ruling: he neither compared the arithmetical soundness of the competing drug quantity calculations nor made particularized credibility determinations. Third, the district court's formal findings are of a piece with our reading of the sentencing transcript. The court eschewed any detailed, independent findings, but, rather, made ____________________ 4This is not a situation involving a simple slip of the tongue or an "awkward locution." Lenn v. Portland Sch. Comm., ____ ____________________ 998 F.2d 1083, 1088 (1st Cir. 1993) (collecting cases). Rather, this case features a studied course of action, thoughtfully undertaken and repeatedly articulated. 6 what appear to be implicit findings. On the order of judgment form, the court adopted the recommended findings contained in the PSI Report. These findings included, of course, the proposed findings presented in the government's April 9 letter a missive premised solely on trial testimony, summarily approved by the probation officer, and eventually appended to the order of judgment form. Fourth, the lack of comparative analysis and detailed findings gains added significance when it is viewed in concert with the judge's avowed uncertainty about the propriety of his actions. If the court were making a fact-specific comparison based on demeanor evidence a humdrum exercise rather than pronouncing a neoteric rule of law, there would have been little point in "trying" to set the stage to give Tavano "a very clear shot on appeal." We are obliged to review a trial court's actions as they are made manifest in the record, cf. Advance Fin. Corp. v. ___ __________________ Isla Rica Sales, Inc., 747 F.2d 21, 26 (1st Cir. 1984) ________________________ (acknowledging that "the district court speaks to [the court of appeals] primarily through its decrees"); and, while word processing is incapable of fully reproducing the thickness of reality, we are confident that, here, the district court formulated a per se rule declaring trial testimony determinative ___ __ of drug quantity, to the exclusion of all other evidence bearing 7 upon the same set of transactions.5 We proceed on that understanding. II. DISCUSSION II. DISCUSSION Having satisfied ourselves as to the import of the record, we summarize the legal principles that allow us to test the soundness of the lower court's rationale and, accordingly, govern the disposition of this appeal. Next, we set some allied concerns to rest. At journey's end, we apply the discerned law in light of what transpired below. A. Applicable Legal Principles. A. Applicable Legal Principles. ___________________________ A number of other tribunals have had occasion to emphasize the obligation that devolves upon a sentencing court presented with conflicting drug quantity evidence to review that evidence and exercise independent judgment. See, e.g., United ___ ____ ______ States v. Goines, 988 F.2d 750, 775 (7th Cir.) (admonishing ______ ______ courts to "resist the urge to accept summarily the quantity alleged by the government"), cert. denied, 114 S. Ct. 241 (1993); _____ ______ United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993) _____________ _______ ("When the amount of drugs for which a defendant is to be held responsible is disputed, the district court must make an independent resolution of the factual issue at sentencing."); ____________________ 5Even if there were room for an objectively reasonable division of opinion on what the judge intended and we see no such room here it is apparent that the ends of justice are best served by giving appellant the benefit of any doubt. Cf., e.g., ___ ____ Bifulco v. United States, 447 U.S. 381, 387 (1980) (discussing _______ _____________ applicability of rule of lenity to ambiguous criminal statutes). 8 United States v. Collado, 975 F.2d 985, 998 (3d Cir. 1992) ______________ _______ (explaining that a "sentencing court must carefully review the government's [drug quantity] submissions to ensure that its estimates are proven by a preponderance of the evidence"). In a case that bears haunting similarities to the case at bar, the Sixth Circuit vacated a defendant's sentence because it appeared possible that the district judge placed the jury's drug quantity findings on a pedestal and treated them as controlling at sentencing, without independent analysis of other relevant evidence. See United States v. Prior, 941 F.2d 427, 430-31 (6th ___ _____________ _____ Cir.), cert. denied, 112 S. Ct. 613 (1991). Such a per se rule, _____ ______ ___ __ Chief Judge Merritt wrote, would defile the principle that "the sentencing judge must exercise independent judgment in sentencing." Id. at 431. ___ We, too, recognize that the district court has a duty to consider all relevant drug quantity evidence at sentencing, even if that evidence is from the same sources as, and conflicts with, evidence adduced at trial. In the final analysis, this duty derives from the Due Process Clause, which guarantees every defendant a "right to be sentenced upon information which is not false or materially incorrect." United States v. Berzon, 941 ______________ ______ F.2d 8, 18 (1st Cir. 1991); accord United States v. Curran, 926 ______ _____________ ______ F.2d 59, 61 (1st Cir. 1991). To give content to this right, a court must take pains to base sentencing judgments upon reliable and accurate information. See Berzon, 941 F.2d at 18; United ___ ______ ______ States v. Prescott, 920 F.2d 139, 143 (2d Cir. 1990). And to ______ ________ 9 assure itself that a piece of proof is sufficiently reliable, a court must consider all the available evidence, including conflicting evidence. The Criminal Rules are designed to nourish the due process right to be sentenced based on substantially accurate information. See Curran, 926 F.2d at 61; United States v. ___ ______ _____________ Gerante, 891 F.2d 364, 367 (1st Cir. 1989). Thus, a district _______ court confronted with an alleged error of fact in a presentence report must make either "(i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." Fed. R. Crim. P. 32(c)(3)(D); see also United ___ ____ ______ States v. Wells Metal Finishing, Inc., 922 F.2d 54, 58 (1st Cir. ______ ___________________________ 1991) (collecting cases). The federal sentencing guidelines slant in the same direction and, to that extent, also nourish the due process right: When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy. U.S.S.G. 6A1.3 (Nov. 1992). In our estimation, this provision not only requires sentencing courts to afford defendants a fair opportunity to present information relevant to sentencing 10 (including information at variance with trial testimony), but also requires courts to mull any information adduced. The government asserts that section 6A1.3 cuts a narrower swath. It notes that, in terms, the policy statement mandates only presentation of conflicting evidence; the language ____________ mentioning evaluation of such evidence ("may consider") is permissive and, therefore, the government says, judicial consideration of presented material is in the court's discretion. _____________ We reject this now-you-see-it, now-you-don't prestidigitation, for neither the government's hocus-pocus nor its crabbed reading of section 6A1.3 make any real sense. Drawing an artificial distinction between presentation and consideration much like drawing a distinction between the opportunity to be heard and the opportunity to be listened to reduces the guideline to gibberish, stripping it of its essential meaning. We do not think the Sentencing Commission, in drafting section 6A1.3, could possibly have meant to give defendants such cold gruel, pretending to confer a benefit, yet, simultaneously, withholding the benefit's intrinsic value. Indeed, with this reality in mind, we have already interpreted section 6A1.3 to "require the _______ sentencing court to make an independent determination regarding the reliability of all proffered evidence." United States v. ______________ Zuleta-Alvarez, 922 F.2d 33, 36 (1st Cir. 1990) (emphasis ______________ supplied), cert. denied, 111 S. Ct. 2039 (1991).6 _____ ______ ____________________ 6Although we did not at the time justify this requirement with specific reference to the text of section 6A1.3, we believe that it may fairly be inferred, both as a gloss on the word 11 The duty to consider evidence conflicting with trial testimony takes on special urgency in the drug quantity context. Though sentencing judges may look to trial testimony when they adjudicate factual disputes ancillary to sentencing,7 see, e.g., ___ ____ United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990), there _____________ ____ are at least two good reasons to be skeptical of total reliance on trial testimony in this context. First, under the guidelines, drug quantity is a factor of extraordinary importance to the sentencing calculus. See United States v. Morillo, ___ F.3d ___, ___ _____________ _______ ___ (1st Cir. 1993) [No. 93-1388, slip op. at 12] (explaining that "drug quantity profoundly affects sentence length," with the result that "relatively small quantitative differences often have a significant leveraging effect" in respect to sentence length); United States v. Bradley, 917 F.2d 601, 604 (1st Cir. 1990) ______________ _______ (describing drug quantity as "a key datum" in determining sentences of drug traffickers). It is, therefore, imperative for a sentencing court to shine a very bright light on possible answers to the drug quantity inquiry. Second, drug quantity testimony, even if subject to reasonable dispute, is not apt to be challenged vigorously at trial, for defendants are ____________________ "adequate" (in the phrase "adequate opportunity to present") and as the only policy consistent with the guideline's spirit. The opportunity to present information could hardly be regarded as "adequate" if the court retained the power to file the presented information away, sight unseen, and continue blithely on its way. 7We refer here to the mine-run of cases; there are, of course, special situations in which reliance on particular trial testimony may be inappropriate. See, e.g., Berzon, 941 F.2d at ___ ____ ______ 20. 12 understandably wary of conceding culpability before the jury and often prefer to pitch their case on bedrock issues of guilt or innocence. See United States v. Valencia-Lucena, 988 F.2d 228, ___ _____________ _______________ 232 (1st Cir. 1993); Zuleta-Alvarez, 922 F.2d at 36. Thus, drug ______________ quantity, by its nature, is likely to be a "factor important to the sentencing determination," and, even after trial, is likely to remain "reasonably in dispute." U.S.S.G. 6A1.3. These are precisely the circumstances under which a timely request to consider conflicting evidence must be honored. To sum up, we hold, consistent with the dictates of due process, that both Fed. R. Crim. P. 32(c)(3)(D) and U.S.S.G. 6A1.3 require a sentencing court independently to consider proffered information that is relevant to matters of consequence in the sentencing determination. In cases where drug quantity qualifies under this rubric, a reviewing court is obliged to consider all available evidence having probative value, including but not limited to witnesses' prior inconsistent statements and other proof contradicting witnesses' trial testimony, and to pass independent judgment thereon. B. Allied Legal Principles. B. Allied Legal Principles. _______________________ In the interest of avoiding any future misunderstandings, we wish to clarify three allied points. First, a trial judge's duty to consider conflicting evidence seasonably presented during the sentencing phase in no way implies a duty of blind acceptance. When all is said and done, a judge, after examining all the relevant evidence, may ordinarily 13 pick and choose. And in the process, the judge may decide, because of its persuasive force in a particular case, to fall back upon, and ultimately to credit, trial testimony. Next, we summarily dismiss appellant's claim that either the duty of independent consideration or, alternatively, Rule 32, implies a duty of free-standing articulation. Explicit findings, while often desirable, are not indispensable in connection with drug quantity issues.8 As a general rule, a trial court lawfully may make implicit findings with regard to sentencing matters, incorporating by reference suitably detailed suggestions limned in the PSI Report or advanced by a party. See ___ United States v. Savoie, 985 F.2d 612, 620 (1st Cir. 1993); Wells _____________ ______ _____ Metal, 922 F.2d at 58. That practice is permissible in drug _____ cases as in other cases.9 See, e.g., United States v. Barnett, ___ ____ _____________ _______ 989 F.2d 546, 551-52 & n.5 (1st Cir.), cert. denied, 114 S. Ct. _____ ______ 148 (1993); United States v. Cruz, 981 F.2d 613, 618-19 (1st Cir. _____________ ____ 1992); Gerante, 891 F.2d at 367. _______ Finally, we do not mean to suggest that a court must always resolve every controversy that touches upon the amount of drugs involved in an offense, scheme, or course of conduct. It is unnecessary to address a dispute over drug quantity if, and to the extent that, adjudicating it will not alter the applicable ____________________ 8We see nothing in our opinion in United States v. Hanono- ______________ _______ Surujun, 914 F.2d 15, 19 (1st Cir. 1990), much bruited by _______ appellant, that compels a different conclusion. 9On this basis, we reject appellant's argument that the court below transgressed Rule 32 by the use of implicit findings in respect to drug quantity. 14 offense level, influence the guideline sentencing range, or bring a different mandatory minimum sentence into play.10 See, e.g., ___ ____ Bradley, 917 F.2d at 604. _______ C. The Bottom Line. C. The Bottom Line. _______________ The principles we have discussed are dispositive of the instant appeal. Although a sentencing court's factbound determination of drug quantity is usually reviewable only for clear error, see id. at 605, judgments concerning the applicable ___ ___ rules of law are subject to plenary review. See Morillo, ___ ___ _______ F.3d at ___ [slip op. at 14]; see also United States v. St. Cyr, ___ ____ _____________ _______ 977 F.2d 698, 701 (1st Cir. 1992) (holding that, under the guidelines, claimed mistakes of law are reviewed de novo). In __ ____ this case, we conclude that the lower court lapsed into error when it formulated a per se rule and refused independently to ___ __ consider evidence at variance with trial testimony. Since we cannot say with fair assurance that the mistake did not affect the outcome, resentencing is required. III. CONCLUSION III. CONCLUSION We need go no further. For the reasons stated, we hold that the district court erred in failing independently to ____________________ 10To illustrate, if the present controversy over drug quantity boiled down to the difference between, say, six and nine kilograms of cocaine, the court would not be obliged to resolve it. Either way, the offense level would be the same, see ___ U.S.S.G. 2D1.1(c)(6) (Drug Quantity Table) (setting offense level for offenses involving 5 or more, but less than 15, kilograms of cocaine), the sentencing range would be the same, cf. id., and the mandatory minimum sentence would be the same, ___ ___ see 21 U.S.C. 841(b)(1)(A)(ii) (fixing obligatory minimum ___ sentence for offenses involving 5 or more kilograms of cocaine). 15 scrutinize proffered evidence conflicting with the trial testimony anent drug quantity.11 Hence, we vacate appellant's sentence and remand for a new sentencing hearing and for further proceedings consistent with this opinion. It is so ordered. It is so ordered. ________________ ____________________ 11We venture no opinion as to whether, after due consideration, the disputed trial testimony should (or should not) be credited in this instance. We similarly refrain from commenting upon what drug quantity is most appropriately attributable to appellant. Those matters are for the nisi prius ____ _____ court. 16