December 15, 1994

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-2453

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 DAVID PHELAN,

 Defendant, Appellant.

 

No. 92-2454

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 STEPHEN LILLIS,

 Defendant, Appellant.

 

No. 92-2455

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 RAYMOND LUCE,

 Defendant, Appellant.

 

 ERRATA SHEET ERRATA SHEET

The opinion of this court issued on December 6, 1994, is amended

as follows:

On page 4, last line, replace the word "undertake" with the word

"undertaken".

December 6, 1994 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS

 FOR THE FIRST CIRCUIT

 

No. 92-2453

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 DAVID PHELAN,

 Defendant, Appellant.

 

No. 92-2454

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 STEPHEN LILLIS,

 Defendant, Appellant.

 

No. 92-2455

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 RAYMOND LUCE,

 Defendant, Appellant.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. A. David Mazzone, U.S. District Judge] 

 

 Before

 Selya, Cyr and Boudin,

 Circuit Judges. 

 

Roger A. Cox, by Appointment of the Court, for appellant Stephen 

Lillis.

David Phelan on brief pro se. 

Raymond Luce on brief pro se. 

Ronald Cohen, by Appointment of the Court, on brief for appellant 

Raymond Luce.

George W. Vien, Assistant United States Attorney, with whom A. 

John Pappalardo, United States Attorney, and Donald K. Stern, United 

States Attorney, were on briefs for the United States. 

 

 

 BOUDIN, Circuit Judge. From 1988 through 1991, 

appellant Stephen Lillis' drug organization sold

phencyclidine ("PCP" or "angel dust") in and around

Cambridge, Somerville and Charlestown, Massachusetts. PCP is

usually smoked after it has been diluted with other

substances. Lillis and his associates would procure PCP in

liquid form, and then treat mint leaves with the liquid,

making it smokable. These treated mint leaves would be sold

in packages to customers who contacted the ring by calling an

electronic-beeper "800" telephone number. A street dealer

for the ring--such as co-appellants David Phelan and Raymond

Luce--would return the call and arrange for a place to meet

to complete the sale. 

 Lillis, Phelan, and Luce stood trial together in late

April 1992. All were convicted of one count of conspiracy to

possess PCP with intent to distribute. 21 U.S.C. 

841(a)(1), 846. Lillis was also convicted of several counts

of possession with intent to distribute, 21 U.S.C. 

841(a)(1), and Luce was convicted of one such count. Lillis,

classified as an organizer, U.S.S.G. 3B1.1(a), received a

262-month sentence, and Phelan a 151-month sentence. Luce,

largely due to the trial judge's finding that he was a

"career offender," see U.S.S.G. 4B1.1 et seq., received a 

360-month sentence. 

 -3- -3-

 On this appeal, each of the appellants challenges his

sentence. Lillis' target is the trial judge's determination

that the Lillis organization distributed or possessed with

intent to distribute between three and ten kilograms of PCP.

Findings as to drug quantities are factual, and we review

them only for clear error. United States v. Whiting, 28 F.3d 

1296, 1304 (1st Cir.), cert. denied, 115 S. Ct. 379 (1994). 

"[T]he sentencing court has broad discretion to determine

what data is, or is not, sufficiently dependable to be used

in imposing sentence." United States v. Tardiff, 969 F.2d 

1283, 1287 (1st Cir. 1992). Yet, because guidelines

sentences vary dramatically depending upon drug quantity, we

have stressed that district courts must exercise care in

making quantity assessments. United States v. Sepulveda, 15 

F.3d 1161, 1196 (1st Cir. 1993), cert. denied, 114 S. Ct. 

2714 (1994).

 Here, the district court attributed to the conspiracy

between three and ten kilograms of a mixture or substance

containing PCP. U.S.S.G. 2D1.1(a)(3), (c). The district

judge based his findings on the evidence presented at trial.

At sentencing, he set forth and explained his findings in

detail. The district court relied most heavily upon the

trial testimony of Robert Knapik, a dealer in the Lillis

organization through much of 1988 and 1989. Based on

Knapik's testimony, the district court found that the

 -4- -4-

conspiracy had in its possession two one-gallon containers of

PCP. Using the unchallenged figure of 2.64 kilograms a

gallon, this is obviously more than three kilograms.

 Lillis' claim that the district court erred is based on

a misreading of the Knapik testimony. Knapik agreed that

"throughout the entire course of [his] stay there [he] only

observed one liquid gallon of PCP." But immediately before

that statement, Knapik made clear that he was testifying

solely about a Reading location used by the ring. In other

testimony, he testified that he saw a gallon of PCP at what

was apparently a Cambridge location also used by the ring. 

We note also that none of the parties objected at the

sentencing hearing when the district court said that two

gallons were proved.

 Even if Knapik observed only one liquid gallon

altogether, it appears that this would not affect the

outcome. He also testified to the presence of at least five

pounds of treated mint leaves, which--together with one

liquid gallon--would more than exceed the three kilogram

minimum. Further, while these were the most specific

figures, there was considerable testimony from other

witnesses at trial about the scope and duration of the

conspiracy that made the three kilogram figure plausible, if

not modest, as an estimate of the conspiracy's scale of

operations.

 -5- -5-

 Luce and Phelan argue that they were essentially street

dealers and not responsible for the large amount of PCP that

the organization sold. Under the Sentencing Guidelines, a

conspirator is responsible for "all reasonably foreseeable

acts and omissions of others in furtherance of the jointly

undertaken criminal activity, that occurred during the

commission of the offense of conviction, in preparation for

that offense, or in the course of attempting to avoid

detection or responsibility for that offense." U.S.S.G. 

1B1.3(a)(1)(B). This guideline language was added effective

November 1, 1992, after the appellants were sentenced, but so

far as pertinent it is merely a clarification of more oblique

earlier language in force when Luce and Phelan were

sentenced. See United States v. Valencia-Lucena, 988 F.2d 

228, 234 n.5 (1st Cir. 1993).

 The organization's activities were reasonably

foreseeable to both Luce and Phelan. Although the ring

handled a large volume of PCP, the number of people in the

ring was comparatively small, and the small size of this

group suggests that each of its members knew generally of the

organization's scope and the amount of PCP it was

distributing. Moreover, Knapik saw Phelan deliver liquid PCP

and treated mint leaves to the Reading apartment "two to

three times," and testified that Phelan delivered PCP from

New York to Massachusetts. Knapik observed Phelan making

 -6- -6-

anywhere from 200 to 1,000 sales for the organization. The

district court was entitled to believe that Phelan had more

sales than those seen by Knapik.

 For his part, Luce was an important street dealer who

worked several shifts for the Lillis organization and played

a role in preparing the PCP for market. Theresa Marrapodi,

Luce's former girlfriend, gave grand jury testimony that she

saw Luce assist Lillis in treating the mint leaves. Knapik

testified that Luce worked a regular evening shift as well as

Saturdays, and a number of customers testified to their

dealing with him. While these purchases do not add up to

three kilograms, they indicate that Luce worked at the heart

of the Lillis organization.

 Luce challenges the court's use of Marrapodi's grand

jury testimony in sentencing, since she was not presented for

cross-examination. But reliable hearsay can be used at

sentencing. United States v. Zuleta-Alvarez, 922 F.2d 33, 36 

(1st Cir. 1990), cert. denied, 500 U.S. 927 (1991). In 

particular, it is settled that district judges may use grand

jury testimony provided it has sufficient indicia of

reliability. See United States v. Williams, 10 F.3d 910, 

914-15 (1st Cir. 1993). The factors that we listed in

Williams--testimony given under oath and in a formal grand 

jury proceeding--apply with equal force here.

 -7- -7-

 Luce also contends that the trial judge acted unlawfully

in sentencing him as a "career offender" pursuant to U.S.S.G.

 4B1.1. He points to 21 U.S.C. 851(a)(1), which states

that "[n]o person who stands convicted of an offense under

this part shall be sentenced to increased punishment by

reason of one or more prior convictions, unless before

trial . . . the United States attorney files an information

with the court . . . stating in writing the previous

conviction to be relied upon." Since no information was

filed, and since he received a greater sentence due to career

offender status, Luce reasons that his sentence must be

vacated.

 Section 851(a)(1) does not apply to sentence increases

under the Sentencing Guidelines but only to increases in the

statutory maximum or minimum penalty based on a prior 

conviction. United States v. Sanchez, 917 F.2d 607, 616 (1st 

Cir. 1990), cert. denied, 499 U.S. 977 (1991). Every circuit 

to consider the issue agrees. See, e.g., United States v. 

Koller, 956 F.2d 1408 (7th Cir. 1992); United States v. 

Whitaker, 938 F.2d 1551 (2d Cir. 1991), cert. denied, 112 S. 

Ct. 977 (1992). Here, Luce's indictment charged him with

conspiracy to possess more than one kilogram of PCP with the

intent to distribute it, a felony that carries with a

statutory minimum of ten years and a maximum of life

 -8- -8-

imprisonment, 21 U.S.C. 841(b)(1)(A)(iv), and he was

sentenced within that range.

 Finally, the district court did not err by refusing to

sever Luce's trial from that of Phelan and Lillis. We review

the trial judge's refusal to sever "only for a manifest abuse

of discretion resulting in a miscarriage of justice." United 

States v. Welch, 15 F.3d 1202, 1210 (1st Cir. 1993), cert. 

denied, 114 S. Ct. 1661 (1994). Luce has made no such 

showing of unfair prejudice and, because a single conspiracy

was plausibly charged, the testimony against Lillis and

Phelan would generally have been admissible against Luce even

if his trial had been severed. See United States v. 

Innamorati, 996 F.2d 456, 469 (1st Cir.), cert. denied, 114 

S. Ct. 409, 114 S. Ct. 459 (1993).

 Affirmed. 

 -9- -9-