42 F.3d 1384
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of America, Appellee,
v.
David PHELAN, Defendant, Appellant.
United States of America, Appellee,
v.
Stephen Lillis, Defendant, Appellant.
United States of America, Appellee,
v.
Raymond Luce, Defendant, Appellant.
 No. 92-2453, 92-2454, 92-2455
 United States Court of Appeals,
First Circuit.
 Dec 6, 1994
 
 Appeals from the United States District Court for the District of Massachusetts [Hon. A. David Mazzone, U.S. District Judge ]
 Roger A. Cox, by Appointment of the Court, for appellant Stephen Lillis.
 David Phelan on brief pro se.
 Raymond Luce on brief pro se.
 Ronald Cohen, by Appointment of the Court, on brief for appellant Raymond Luce.
 George W. Vien, Assistant United States Attorney, with whom A. John Pappalardo, United States Attorney, and Donald K. Stern, United States Attorney, were on briefs for the United States.
 D.Mass.
 AFFIRMED.
 Before SELYA, CYR and BOUDIN, Circuit Judges.
 BOUDIN, Circuit Judge.
 
 
 1
 From 1988 through 1991, appellant Stephen Lillis' drug organization sold phencyclidine ("PCP" or "angel dust") in and around Cambridge, Somerville and Charlestown, Massachusetts. PCP is usually smoked after it has been diluted with other substances. Lillis and his associates would procure PCP in liquid form, and then treat mint leaves with the liquid, making it smokable. These treated mint leaves would be sold in packages to customers who contacted the ring by calling an electronic-beeper "800" telephone number. A street dealer for the ring-such as co-appellants David Phelan and Raymond Luce-would return the call and arrange for a place to meet to complete the sale.
 
 
 2
 Lillis, Phelan, and Luce stood trial together in late April 1992. All were convicted of one count of conspiracy to possess PCP with intent to distribute. 21 U.S.C. Secs. 841(a)(1), 846. Lillis was also convicted of several counts of possession with intent to distribute, 21 U.S.C. Sec. 841(a)(1), and Luce was convicted of one such count. Lillis, classified as an organizer, U.S.S.G. Sec. 3B1.1(a), received a 262-month sentence, and Phelan a 151-month sentence. Luce, largely due to the trial judge's finding that he was a "career offender," see U.S.S.G. Sec. 4B1.1 et seq., received a 360-month sentence.
 
 
 3
 On this appeal, each of the appellants challenges his sentence. Lillis' target is the trial judge's determination that the Lillis organization distributed or possessed with intent to distribute between three and ten kilograms of PCP. Findings as to drug quantities are factual, and we review them only for clear error. United States v. Whiting, 28 F.3d 1296, 1304 (1st Cir.), cert. denied, 115 S. Ct. 379 (1994). "[T]he sentencing court has broad discretion to determine what data is, or is not, sufficiently dependable to be used in imposing sentence." United States v. Tardiff, 969 F.2d 1283, 1287 (1st Cir. 1992). Yet, because guidelines sentences vary dramatically depending upon drug quantity, we have stressed that district courts must exercise care in making quantity assessments. United States v. Sepulveda, 15 F.3d 1161, 1196 (1st Cir. 1993), cert. denied, 114 S. Ct. 2714 (1994).
 
 
 4
 Here, the district court attributed to the conspiracy between three and ten kilograms of a mixture or substance containing PCP. U.S.S.G. Secs. 2D1.1(a)(3), (c). The district judge based his findings on the evidence presented at trial. At sentencing, he set forth and explained his findings in detail. The district court relied most heavily upon the trial testimony of Robert Knapik, a dealer in the Lillis organization through much of 1988 and 1989. Based on Knapik's testimony, the district court found that the conspiracy had in its possession two one-gallon containers of PCP. Using the unchallenged figure of 2.64 kilograms a gallon, this is obviously more than three kilograms.
 
 
 5
 Lillis' claim that the district court erred is based on a misreading of the Knapik testimony. Knapik agreed that "throughout the entire course of [his] stay there [he] only observed one liquid gallon of PCP." But immediately before that statement, Knapik made clear that he was testifying solely about a Reading location used by the ring. In other testimony, he testified that he saw a gallon of PCP at what was apparently a Cambridge location also used by the ring. We note also that none of the parties objected at the sentencing hearing when the district court said that two gallons were proved.
 
 
 6
 Even if Knapik observed only one liquid gallon altogether, it appears that this would not affect the outcome. He also testified to the presence of at least five pounds of treated mint leaves, which-together with one liquid gallon-would more than exceed the three kilogram minimum. Further, while these were the most specific figures, there was considerable testimony from other witnesses at trial about the scope and duration of the conspiracy that made the three kilogram figure plausible, if not modest, as an estimate of the conspiracy's scale of operations.
 
 
 7
 Luce and Phelan argue that they were essentially street dealers and not responsible for the large amount of PCP that the organization sold. Under the Sentencing Guidelines, a conspirator is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. Sec. 1B1.3(a)(1)(B). This guideline language was added effective November 1, 1992, after the appellants were sentenced, but so far as pertinent it is merely a clarification of more oblique earlier language in force when Luce and Phelan were sentenced. See United States v. Valencia-Lucena, 988 F.2d 228, 234 n.5 (1st Cir. 1993).
 
 
 8
 The organization's activities were reasonably foreseeable to both Luce and Phelan. Although the ring handled a large volume of PCP, the number of people in the ring was comparatively small, and the small size of this group suggests that each of its members knew generally of the organization's scope and the amount of PCP it was distributing. Moreover, Knapik saw Phelan deliver liquid PCP and treated mint leaves to the Reading apartment "two to three times," and testified that Phelan delivered PCP from New York to Massachusetts. Knapik observed Phelan making anywhere from 200 to 1,000 sales for the organization. The district court was entitled to believe that Phelan had more sales than those seen by Knapik.
 
 
 9
 For his part, Luce was an important street dealer who worked several shifts for the Lillis organization and played a role in preparing the PCP for market. Theresa Marrapodi, Luce's former girlfriend, gave grand jury testimony that she saw Luce assist Lillis in treating the mint leaves. Knapik testified that Luce worked a regular evening shift as well as Saturdays, and a number of customers testified to their dealing with him. While these purchases do not add up to three kilograms, they indicate that Luce worked at the heart of the Lillis organization.
 
 
 10
 Luce challenges the court's use of Marrapodi's grand jury testimony in sentencing, since she was not presented for cross- examination. But reliable hearsay can be used at sentencing. United States v. Zuleta-Alvarez, 922 F.2d 33, 36 (1st Cir. 1990), cert. denied, 500 U.S. 927 (1991). In particular, it is settled that district judges may use grand jury testimony provided it has sufficient indicia of reliability. See United States v. Williams, 10 F.3d 910, 914-15 (1st Cir. 1993). The factors that we listed in Williams-testimony given under oath and in a formal grand jury proceeding-apply with equal force here.
 
 
 11
 Luce also contends that the trial judge acted unlawfully in sentencing him as a "career offender" pursuant to U.S.S.G. Sec. 4B1.1. He points to 21 U.S.C. Sec. 851(a)(1), which states that "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial ... the United States attorney files an information with the court ... stating in writing the previous conviction to be relied upon." Since no information was filed, and since he received a greater sentence due to career offender status, Luce reasons that his sentence must be vacated.
 
 
 12
 Section 851(a)(1) does not apply to sentence increases under the Sentencing Guidelines but only to increases in the statutory maximum or minimum penalty based on a prior conviction. United States v. Sanchez, 917 F.2d 607, 616 (1st Cir. 1990), cert. denied, 499 U.S. 977 (1991). Every circuit to consider the issue agrees. See, e.g., United States v. Koller, 956 F.2d 1408 (7th Cir. 1992); United States v. Whitaker, 938 F.2d 1551 (2d Cir. 1991), cert. denied, 112 S. Ct. 977 (1992). Here, Luce's indictment charged him with conspiracy to possess more than one kilogram of PCP with the intent to distribute it, a felony that carries with a statutory minimum of ten years and a maximum of life imprisonment, 21 U.S.C. Sec. 841(b)(1)(A)(iv), and he was sentenced within that range.
 
 
 13
 Finally, the district court did not err by refusing to sever Luce's trial from that of Phelan and Lillis. We review the trial judge's refusal to sever "only for a manifest abuse of discretion resulting in a miscarriage of justice." United States v. Welch, 15 F.3d 1202, 1210 (1st Cir. 1993), cert. denied, 114 S. Ct. 1661 (1994). Luce has made no such showing of unfair prejudice and, because a single conspiracy was plausibly charged, the testimony against Lillis and Phelan would generally have been admissible against Luce even if his trial had been severed. See United States v. Innamorati, 996 F.2d 456, 469 (1st Cir.), cert. denied, 114 S. Ct. 409, 114 S. Ct. 459 (1993).
 
 
 14
 Affirmed.